**UNITED STATES of America, Plaintiff,**

v.

**Anton TITTJUNG, Defendant.**

**Civ. A. No. 89–C–1068.**

United States District Court,
E.D. Wisconsin.

Dec. 14, 1990.

Elliot M. Rockler and Denise Noonan Slavin, Office of Special Investigations—Criminal Div., Washington, D.C., for plaintiff.

David J. Cannon, Michael Best & Friedrich, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

### I. BACKGROUND

On September 1, 1989, plaintiff, United States of America ("the Government"), brought this action pursuant to Section 340(a) of the Immigration and Nationality Act of 1952, as amended ("INA"), 8 U.S.C. § 1451(a), to revoke the United States citizenship of defendant Anton Tittjung ("Tittjung"), to set aside the January 9, 1974 order of this court admitting Tittjung to citizenship, and to cancel Tittjung's Certificate of Naturalization, No. 9785345, issued pursuant to that order. As the basis for its complaint, the Government alleges that Tittjung served as an armed concentration camp guard and therefore procured his citizenship illegally.

On August 16, 1990, the Government filed a motion for summary judgment. This court denied the Government's motion for summary judgment on October 19, 1990, because material issues of fact remained in dispute. Subsequently, this court held a trial on this matter, which commenced on October 31, 1990, and concluded on November 2, 1990. During the trial, this court heard live witness testimony and received various Government exhibits regarding the nature of concentration camps and the role of armed prison guards in such camps. This court also received,

and heard testimony authenticating, Government exhibits establishing that Tittjung had served in the Waffen–SS as an armed concentration camp guard. At trial, Tittjung offered no evidence or testimony to the contrary. On the basis of the trial, this court concludes that Tittjung did serve as an armed concentration camp guard and therefore holds that Tittjung's citizenship must be revoked and his Certificate of Naturalization cancelled as a matter of law.

### II. JURISDICTION

The following statutes grant this court jurisdiction over this matter: (1) 28 U.S.C. § 1345 (except as otherwise provided, the United States district courts shall have original jurisdiction of all civil actions commenced by the United States); (2) 8 U.S.C. § 1421(a) (jurisdiction to naturalize persons as citizens is conferred on United States district courts); and (3) 8 U.S.C. § 1451(a) (action to revoke citizenship to be brought in any court specified in 8 U.S.C. § 1421(a)).

Venue is proper in this district under 8 U.S.C. § 1451(a), which permits an action to revoke citizenship to be brought in the judicial district in which the naturalized citizen resides at the time of bringing suit.

### III. FINDINGS OF FACT

A. *Defendant Tittjung's Background.*

Tittjung was born on November 17, 1924, in Erdud [1], Yugoslavia (Exh. 1 at 2, 4, 9, 21, 23, 27, and 35; Exh. 10 at 4; Exh. 12). From birth until 1933, Tittjung lived in Erdud where he attended primary school (Exh. 12). Between 1933 and 1937, Tittjung attended secondary school in Belgrade, Yugoslavia (*Id.*). Thereafter, Tittjung returned to Erdud where he resided until 1942 (*Id.;* Exh. 1 at 5).

B. *Defendant Tittjung's Service as an SS Guard.*

Tittjung joined [2] the Waffen–SS in October 1942 and remained in the Waffen–SS

---

1. The name of this town appears in some documents as "Erdut," rather than "Erdud."

2. Mr. Tittjung told the Displaced Persons Commission that he had been conscripted into the Waffen–SS in October 1942 (Ex. 1 at 5). According to the documentary evidence and trial

until the conclusion of the war in 1945 (Exh. 1 at 5; Exh. 12 at 3). Tittjung was a member of the Totenkopf–Sturmbann.[3] (Exh. 14 at 1, entry 100). Tittjung wore that organization's symbol, a skull and crossbones, on the collar of his uniform (Testimony of historian Charles Sydnor, Jr.). While a member of the Totenkopf–Sturmbann, Tittjung served as a guard at the Mauthausen Concentration Camp and its subcamp Gross Raming (Testimony of Sydnor; Exh. 14, entry 100).

Tittjung's service as an armed guard is clearly and convincingly documented by an SS-prepared roster dated July 26, 1944. The roster indicates that an Anton Tittjung was a member of the 5th Company of SS Death's Head Battalion headquartered at Mauthausen who was stationed at Gross Raming (Testimony of Sydnor; Exh. 14). The roster specifically lists the names, dates of birth, and next-of-kin addresses for the guards at Mauthausen and its subcamps. Entry 100 of the roster bears the following information: the name "Anton Tittjung," the rank "lance corporal," the date of birth "17 November 1924," and the address "Parents: in Erdud, Croatia." This guard roster was seized at Mauthausen on May 6, 1945, by Major Eugene Cohen of the U.S. Army during his official investigation of war crimes committed at Mauthausen and its subcamps (Testimony of Sydnor; Exh. 15). This roster, as well as other similar rosters, are contained in the report of Major Cohen's investigation ("Cohen Report"), portions of which subsequently were admitted into evidence at Nurnberg as Exhibit USA 249 (Testimony of Sydnor; Exh. 15). In the unrebutted opinion of Dr. Charles Sydnor, Jr., a respected historian who has written extensively on the history of Nazi concentration camps, the roster is authentic and lists only guards at the Gross Raming subcamp.

### C. The Nature of Guard Service at Mauthausen and Gross Raming.

The Totenkopf–Sturmbann was a distinct organization within the Waffen–SS which was responsible for the operation of the Mauthausen camp complex, including its subcamp at Gross Raming, which were concentration camps established and operated by Nazi Germany in Nazi-occupied Austria (Testimony of Sydnor; Exhs. 14 & 15). All guards of prisoners in the Mauthausen concentration camp system were members of the Totenkopf–Sturmbann (Testimony of Sydnor; Exh. 15).

Guards at concentration camps such as Mauthausen and Gross Raming performed various duties, including guarding prisoners to ensure that they performed forced labor and that they did not escape from the labor site; guarding prisoners on forced marches from the main camp to subcamps; and guarding prisoners from the camp perimeter and its watchtowers to ensure that they did not escape (Testimony of Sydnor; Testimony of Zivadin Ljubisavljevic, a former prisoner at Mauthausen and Gross Raming). The guards were armed with rifles or submachine guns while performing their guard duty, and they were under orders to shoot at any prisoner attempting to escape (Testimony of Sydnor; Exhs. 54 & 55).

While performing such guard duties, members of the Totenkopf–Sturmbann ordered, incited, assisted, and generally participated in the persecution of prisoners because of their race, religion, national origin, or political opinion (Testimony of Sydnor). This persecution included, but was not limited to forcible confinement, slave labor, deprivation, physical and emotional abuse, torture, and exterminations (Testimony of Sydnor and Ljubisavljevic).

testimony, however, the SS had not yet reached an agreement with the government of Croatia on the conscription of ethnic Germans as of that date (Testimony of Sydnor). Such evidence provides strong support for the Government's position that Tittjung voluntarily joined the Waffen–SS. However, as this opinion discusses *infra*, the voluntariness of Defendant's service as an armed concentration camp guard is legal-

ly irrelevant; all such guards are deemed to have procured their visas illegally. *Fedorenko v. United States*, 449 U.S. 490, 510–11, 514, 101 S.Ct. 737, 749–50, 751, 66 L.Ed.2d 686 (1981).

**3.** The English translation of "Totenkopf–Sturmbann" is "Death's Head Battalion."

During the period from 1943 to 1945, persons were imprisoned at the Mauthausen camp complex because of their race, religion, national origin, or political opinion, and from approximately January 1943 until August 1944, persons were imprisoned at the Gross Raming subcamp for the same reasons (Testimony of Sydnor). Among the prisoners incarcerated at Mauthausen and Gross Raming were: Jews; Russian, British, and American prisoners of war; and political opponents of the Nazis, including citizens of Yugoslavia, Poland, the Soviet Union, Spain and many other European countries (*Id.*). Some prisoners at Mauthausen and its subcamps wore symbols corresponding to the racial, religious, or national origin reasons for their imprisonment, in addition to symbols corresponding to their country of origin (Testimony of Sydnor and Ljubisavljevic). Mauthausen and Gross Raming were concentration camps, the operation of which was entrusted exclusively to the Totenkopf–Sturmbann Company to which Tittjung belonged.

During the period of Tittjung's service, the death toll at Mauthausen ranged from 200 to 300 per day in 1943, and from 350 to 400 per day in 1944 (Testimony of Sydnor). In all, thousands of prisoners died in Mauthausen as the result of shooting, gassing, hanging, electrocution, starvation, forced labor, lethal injection, and other forms of killing (*Id.*). At Gross Raming alone, at least 185 prisoners were killed during the period of Tittjung's service (*Id.*).

D. *Defendant Tittjung's Efforts to Obtain Admission to and Residence in the United States.*

Following World War II, Tittjung resided in Austria for several years. Then, Tittjung applied for entry as a permanent resident pursuant to the Displaced Persons Act of 1948 ("DPA"), Pub.L. No. 87–774, 62 Stat. 1009, amended by Pub.L. No. 81–555, 64 Stat. 219 (1950). The purpose of the DPA was to enable European refugees driven from their homelands by the war to immigrate to the United States without regard to traditional immigration quotas. *Fedorenko v. United States*, 449 U.S. 490, 495, 101 S.Ct. 737, 741, 66 L.Ed.2d 686 (1981). The Act specifically excluded from the category of "displaced persons" individuals who had "assisted the enemy in persecuting civil[ians]." *Id.;* § 2(a), 62 Stat. 3051. The DPA also established an elaborate system of interviews for determining eligibility for displaced person status. At no point in this interview process did Tittjung disclose to United States officials that he had served as a concentration camp guard or been a member of the Totenkopf–Sturmbann.

First, on February 6, 1952, during the course of his visa application, Tittjung completed, signed, and swore to a mandatory "Fragebogen" or questionnaire in which he omitted any reference to his service in the Totenkopf–Sturmbann (Exh. 10 at 17). In describing his military service, Tittjung reported only that he had been a member of the Prinz Eugen Division of the Waffen–SS between 1942 and 1945.[4] By disclosing only his membership in the Prinz Eugen Division, Tittjung either wilfully or inadvertently concealed both his disqualifying membership in the Totenkopf–Sturmbann as well as his service as a concentration camp guard, each of which were grounds for immigration ineligibility.

Next, on March 25, 1952, Tittjung sought a determination from the United States Displaced Persons Commission ("DPC") that he was a "displaced person" as defined in the DPA and therefore eligible to immigrate to the United States. In seeking this determination, Tittjung represented to the U.S. Army Counter Intelligence Corps ("CIC") that he became a member of the Waffen–SS Prinz Eugen Division in 1942, received four months infantry and artillery training, fought against the Tito partisans in Yugoslavia between February 1943 and Fall 1944, and then retreated to the Austria–Yugoslavia border, arriving there in May 1945 (Exh. 10 at 4). Again, Tittjung did not disclose his service in the Totenkopf–Sturmbann at Gross Raming.

---

**4.** At the time of the completion of the defendant's Fragebogen, rank and file members of the Prinz Eugen Division were deemed eligible for entry into the United States.

In considering Tittjung's status as a displaced person, the DPC noted the CIC's screening report which concluded that "nothing therein ... warrant[s] applicant's exclusion from the United States." (Exh. 1 at 5). Relying in part on the CIC report, the DPC certified Tittjung as a displaced person on April 9, 1952 (Exh. 1 at 4–6).

On April 10, 1952, Tittjung again omitted these facts in swearing to his permanent residence visa application at Salzburg, Austria (Exh. 1 at 35). On the visa application, Tittjung responded to questions about his date and place of birth and his places of previous residence by reporting only that he was born on November 17, 1924, at Erdud, Yugoslavia, and that his place of residence from 1942–1945 had been the "German Army" (Id.). Tittjung did not disclose any more particular information regarding his membership in the Totenkopf–Sturmbann, his residence at Gross Raming, or the nature of his military duties at Gross Raming (See Id.).

On April 16, 1952, Tittjung executed an Affidavit as to Subversive Organizations and Movements (Form I–144), in which he swore under oath that he had "never ... assisted in the persecution of any person because of race, religion, or national origin." (Exh. 1 at 29–30). Tittjung again omitted reference to his guard service, but it is unclear whether any government agent ever informed Tittjung that his service as an armed camp guard prevented him from taking this oath.

Finally, on August 19, 1955, upon reentering the United States as a nonquota immigrant under the Immigration and Nationality Act after a trip to Europe with an expired reentry permit, Tittjung swore to another visa application, on which he described his place of residence from 1942 to 1945 only as "German soldier in Yugoslavia."

Thus, Tittjung failed to disclose his guard service and membership in the Totenkopf–Sturmbann on each occasion when he sought permanent residence in the United States.

E. *Defendant Tittjung's Efforts to Obtain United States Citizenship.*

On November 2, 1973, Tittjung filed with the Immigration and Naturalization Service ("INS") an "Application to File Petition for Naturalization" and a "Statement of Facts for Preparation of Petition," which together comprised INS Form N–400 (Exh. 1 at 12 *et seq.*). Tittjung responded to Question 7 on Form N–400, which asked the applicant to list every "organization, association, ... or similar group, and [his] foreign military service," by listing only the "German Army" (Id.). Thus, Tittjung never informed any United States official of his service as an armed guard at Gross Raming during the naturalization process. It has not been established, however, that Tittjung was asked directly during the naturalization process about whether he had performed concentration camp guard service.

On November 28, 1973, Tittjung filed with this court his petition for naturalization. On January 9, 1974, this court granted Tittjung's Petition for Naturalization and issued to him Certificate of Naturalization No. 9785345.

IV. ARGUMENTS OF THE PARTIES

The Government claims that Tittjung served as an armed guard in a Nazi concentration camp and later misrepresented and concealed this service (1) when applying for a visa to enter the United States under the DPA, (2) when applying for a visa to reenter the United States under the Immigration and Nationality Act of 1952, and (3) when applying for naturalization. The complaint alleges that Tittjung should be denaturalized because of (1) his service in the Mauthausen system, (2) his subsequent misrepresentation and concealment of that service, and (3) his repeated false testimony for the purpose of gaining naturalization.

The Government has sought to establish Tittjung's concentration camp service on the basis of the Gross Raming guard roster and upon the drawing of adverse inferences based upon Tittjung's failure to offer any rebuttal testimony.

Tittjung responds that the Government has failed to establish sufficiently that he served as a concentration camp guard. Specifically, Tittjung argues that the Government has (1) not sufficiently authenticated the concentration camp guard roster bearing defendant's name, (2) offered no eyewitness testimony to establish that Tittjung served as an armed guard, and (3) not met its burden of proof in relying upon opinion testimony regarding the nature of guard service at the Mauthausen and Gross Raming camps.

## V. ANALYSIS

### A. Standard of Determination

■ In this denaturalization action, the Government bears a heavy burden. It must prove its case by clear, unequivocal, and convincing evidence. *Schneiderman v. United States*, 320 U.S. 118, 125, 63 S.Ct. 1333, 1336, 87 L.Ed. 1796 (1943); *Fedorenko v. United States*, 449 U.S. 490, 505–506, 101 S.Ct. 737, 746–747, 66 L.Ed.2d 686 (1981).

### B. Defendant Tittjung's Eligibility for a Visa Under the DPA

■ This court finds, based upon documentary and supporting testimonial evidence, that Tittjung did serve as a guard at the Mauthausen concentration camp complex, and was therefore ineligible for a visa under the DPA. Tittjung has not contradicted the Government's evidence of his guard service, nor has he challenged the Government's argument that armed concentration camp guards were ineligible for visas.

#### 1. The Evidence Convincingly Establishes Tittjung's Guard Service.

The Gross Raming guard roster bearing Tittjung's name clearly and convincingly establishes that Tittjung did in fact serve as an armed concentration camp guard. This court finds that the roster list refers to the defendant Tittjung and is reliable for several reasons. First, the "Anton Tittjung" entry on the roster bears the same date of birth and hometown that Tittjung listed on his visa application and on other documents (Exhs. 1, 10, & 14). Second, in the opinion of an expert historian familiar with concentration camp documents, the roster appears similar in content and style to other rosters then in use in the Mauthausen camp system (Testimony of Sydnor; Exhs. 14 & 15). Third, the markings at the bottom of the roster (noting that an entry number had been repeated) reveal that the roster was proofread for accuracy before being signed by the SS company commander on July 27, 1944 (Testimony of Sydnor; Exh. 14). Fourth, the fact that the "Cohen Report" notes that correction at the bottom of the roster establishes that the roster was seized at Mauthausen by U.S. Army investigators in early May 1945 (Exhs. 14 & 15). Finally, extrinsic documents, including U.S. military trial records and statements as well as the Mauthausen records of prisoner deaths, corroborate that as many as ten of the other guards named on the roster were in fact stationed as guards at Gross Raming around the date indicated on the roster (Testimony of Sydnor; Exhs. 14, & 73–77). Hence, the Gross Raming guard roster is authentic and convincingly establishes that Tittjung was a concentration camp guard.

#### 2. Defendant Tittjung's Ineligibility for Visa and Citizenship

A certificate of naturalization must be revoked if it was illegally procured. 8 U.S.C. § 1451(a); *Fedorenko v. United States*, 449 U.S. 490, 515, 101 S.Ct. 737, 751, 66 L.Ed.2d 686 (1981). Naturalization is illegally procured if a naturalized citizen has failed to comply with the statutory prerequisites for naturalization. 449 U.S. at 515, 101 S.Ct. at 751. Lawful admission into this country with a valid immigration visa, is a statutory requirement for naturalization. *See* 8 U.S.C. § 1427(a)(1). The amended DPA, however, "made all those who assisted in the persecution ineligible for visas." 449 U.S. at 512, 101 S.Ct. at 750 (footnote omitted).[5] Therefore, the Su-

---

**5.** In 1950, Congress amended Section 13 of the DPA so as to deny explicitly displaced person

preme Court established in *Fedorenko* that all concentration camp guards were ineligible as a matter of law for visas because they had assisted in the type of persecution proscribed by the DPA. 449 U.S. at 513–16, 101 S.Ct. at 750–52.

In *Fedorenko*, the facts before the Court established that Fedorenko had served as a perimeter guard at the Treblinka concentration camp, but did not establish any specific actions committed by Fedorenko against prisoners. The Court held that an "individual's service as a concentration camp armed guard—whether voluntary or involuntary—made him ineligible for a visa." 449 U.S. at 512, 101 S.Ct. at 750. In reaching this decision, the Court found that there was "no room for doubt that if petitioner had disclosed the fact that he had been an armed guard at Treblinka, he would have been found ineligible for a visa under the DPA." *Id.* at 513, 101 S.Ct. at 750.

This court is bound to reach the same conclusion that the Supreme Court reached in *Fedorenko*. Prisoners were persecuted and killed because of race, religion, or national origin at Gross Raming (Testimony of Sydnor), as at Treblinka. *See* 449 U.S. at 512–13 n. 34, 101 S.Ct. at 750 n. 34. In addition, guards at Gross Raming were issued uniforms, armed with guns, and paid a stipend (Testimony of Sydnor), as were guards at Treblinka. *See* 449 U.S. at 512–13 n. 34, 101 S.Ct. at 750 n. 34. Hence, like *Fedorenko*, this case does not involve "difficult line-drawing problems" regarding the nature of Tittjung's wartime service. *Id.* Moreover, the testimony of officials who processed Tittjung's visa application under the DPA establish unequivocally that if Tittjung had in fact disclosed that he had been a guard at Gross Raming, he would not have been granted a visa under the DPA (Testimony of Schneider, Ziemack, Bishop, and Gerstl).

This court finds that Tittjung was an armed guard at a Nazi concentration camp, and therefore concludes that he failed to obtain a valid visa, which is a statutory

prerequisite to naturalization. 8 U.S.C. § 1427(a); *Fedorenko*, 449 U.S. at 514–15, 101 S.Ct. at 751–52; *United States v. Kairys*, 782 F.2d 1374, 1377 n. 3 (7th Cir.1989), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 2258, 90 L.Ed.2d 703 (1986). Consequently, Tittjung's subsequent naturalization was illegally procured. *Fedorenko*, 449 U.S. at 512–15, 101 S.Ct. at 750–52; *Kairys*, 782 F.2d at 1377 n. 3. This conclusion is not affected by the voluntariness of Tittjung's service, 449 U.S. at 512–13, 101 S.Ct. at 750–51, or the lack of eyewitness testimony showing Tittjung's individual involvement in persecution, 449 U.S. at 510 n. 32, 512, 513, 101 S.Ct. at 749 n. 32, 750, 751.

This court has found that Tittjung was ineligible for a visa as a matter of law. Therefore, it need not address the Government's additional claims based upon Tittjung's alleged misrepresentations in procuring his visa and in obtaining naturalization.

IT IS THEREFORE ORDERED that the United States citizenship of Anton Tittjung is REVOKED;

IT IS FURTHER ORDERED that the January 9, 1974 order of this court admitting Anton Tittjung to citizenship is SET ASIDE;

IT IS FURTHER ORDERED that Anton Tittjung's Certificate of Naturalization, No. 9785345, is CANCELLED.

---

status, and thus visa eligibility, to applicants who had assisted Nazi Germany in persecuting

civil populations of countries. 64 Stat. 219, 230 (June 16, 1951).