Anton TITTJUNG, Petitioner,

v.

Janet RENO, U.S. Attorney General, and the U.S. Immigration and Naturalization Service, Respondents.

No. 98–3407.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1999.

Decided Dec. 2, 1999.

Rehearing Denied Feb. 9, 2000.

Harold D. Block (argued), Milwaukee, WI, for petitioner.

Janet Reno, U.S. Attorney, Office of the U.S. Attorney General, Washington, DC, Samuel Der-Yeghiayan, Immigration and Naturalization Service, Chicago, IL, Jeffrey L. Menkin (argued), Department of Justice, Office of Special Investigations, Washington, DC, for respondent.

Before BAUER, FLAUM, and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

The Immigration Court ordered that Anton Tittjung be deported to Croatia, pursuant to the Holtzman Amendment, 8 U.S.C. § 1227(a)(4)(D) (formerly 8 U.S.C. § 1251(a)(4)(D)), which requires the deportation of aliens who assisted or otherwise

participated in the persecution of persons because of race, religion, national origin, or political opinion under the direction of, or in association with, the Nazi government of Germany. The Board of Immigration Appeals (BIA) affirmed the deportation order and dismissed Tittjung's appeal. Tittjung filed a motion for reconsideration, which the BIA denied. Tittjung now petitions this Court to review the BIA's denial of his motion for reconsideration. For the reasons stated below, we affirm the decision of the BIA.

## Background

Tittjung was born in Erdud, Yugoslavia (now part of the Republic of Croatia) on November 17, 1924.[1] He joined the Waffen SS, an organization of the Nazi government of Germany, in October 1942 and remained in the Waffen SS until the conclusion of World War II in 1945. Tittjung was a member of the SS *Totenkopf-Sturmbann* (Death's Head Battalion), a collection of units with primary responsibility for guarding concentration camps and implementing the Nazi policy of persecuting Jews and other targeted groups. While a member of the SS Death's Head Battalion, Tittjung served as an armed guard at the Mauthausen concentration camp and its subcamp at Gross Raming, in Nazi-occupied Austria.

Mauthausen and its subcamp Gross Raming were places of persecution. Jews and others were imprisoned there because of their race, religion, national origin, or political opinion. During the period of Tittjung's service, thousands of prisoners died in Mauthausen and Gross Raming as the result of shooting, gassing, forced labor, and other forms of killing.

As a member of the SS Death's Head Battalion at Mauthausen, Tittjung's duties included ensuring that prisoners performed forced labor and did not escape, as well as guarding prisoners on forced

marches. Guards were armed and were under orders to shoot any prisoners who tried to escape. While performing their duties, members of the SS Death's Head Battalion ordered, incited, assisted, and generally participated in the persecution of prisoners because of their race, religion, or national origin.

In 1952, Tittjung applied for and obtained a visa to enter the United States pursuant to the Displaced Persons Act of 1948 ("DPA"). At no point during the application process did Tittjung disclose his association with the SS Death's Head Battalion or his participation in Nazi persecution as a concentration camp guard. In 1973, Tittjung applied for naturalization, again concealing his service as an armed concentration camp guard. Tittjung was granted U.S. citizenship on January 9, 1974.

In September 1989, the Government brought an action in the United States District Court for the Eastern District of Wisconsin, seeking to revoke Tittjung's citizenship. The complaint alleged that Tittjung was ineligible for U.S. citizenship because of his SS Death's Head Battalion guard service at Mauthausen and Gross Raming, and because he misrepresented and concealed his wartime activities to immigration and naturalization officials, thereby procuring his citizenship illegally.

Following a trial on the merits, the district court found that the Government proved by clear, unequivocal, and convincing evidence that Tittjung had served as an armed guard at Mauthausen and Gross Raming. The district court held that as a concentration camp guard, Tittjung assisted in the persecution of persons because of their race, religion, or national origin, and was therefore ineligible for a visa under the DPA when he entered the United States. Because Tittjung had not legally entered the United States, his citizenship

---

1. These background facts are laid out in greater detail in the opinion by the District Court for the Eastern District of Wisconsin, in Tittjung's prior denaturalization proceeding. *United States v. Tittjung,* 753 F.Supp. 251, 252–55 (E.D.Wis.1990).

was unlawfully procured and the district court revoked it. *United States v. Tittjung*, 753 F.Supp. 251, 256–57 (E.D.Wis.1990). Because Tittjung's guard service required his denaturalization as a matter of law, the district court did not address the allegation that Tittjung misrepresented his service to visa officials and thereby entered the United States by means of fraud. *Id.* at 257. This Court affirmed the district court's denaturalization order in an opinion dated November 14, 1991, 948 F.2d 1292 (7th Cir.1991), and the Supreme Court thereafter denied certiorari, 505 U.S. 1222, 112 S.Ct. 3035, 120 L.Ed.2d 905 (1992).

On May 11, 1992, the Government commenced deportation proceedings before the Immigration Court against Tittjung, raising three bases for deportation: (1) that, as a guard at the Mauthausen concentration camp, Tittjung assisted or otherwise participated in the persecution of persons because of race, religion, national origin, or political opinion under the direction of, or in association with, the Nazi government of Germany, in violation of the Holtzman Amendment, 8 U.S.C. § 1251(a)(4)(D) (now codified as 8 U.S.C. § 1227(a)(4)(D)); (2) that, insofar as he was ineligible for a visa under the DPA, he was excludable at the time of his entry into the United States, 8 U.S.C. § 1251(a)(1)(A) (now codified as 8 U.S.C. § 1227(a)(1)(A)); and (3) that he was present in the United States unlawfully, in violation of 8 U.S.C. § 1251(a)(1)(B) (now codified as 8 U.S.C. § 1227(a)(1)(B)).

The Government moved for summary judgment and an order of deportation, based upon the application of the doctrine of collateral estoppel to facts—in particular, Tittjung's wartime service as an armed concentration camp guard—established in the denaturalization trial. The Government submitted portions of the denaturalization trial record, which included documentary evidence and expert testimony. On March 24, 1994, the Immigration Court granted the Government's motion and ordered that Tittjung be deported pursuant to the Holtzman Amendment. Having reached this conclusion, the Immigration Court did not resolve whether Tittjung was deportable under any misrepresentation theory. Tittjung declined to designate a country of deportation, so the Immigration Court designated Croatia, the country having present jurisdiction over Tittjung's place of birth. The Immigration Court also held that under the Holtzman Amendment, Tittjung was statutorily ineligible for relief from deportation.

Tittjung appealed the decision of the Immigration Court to the BIA. On August 13, 1997, the BIA affirmed the deportation order and dismissed Tittjung's appeal. On September 17, 1997, Tittjung filed a motion for reconsideration with the BIA. On November 5, 1997, while the *motion for reconsideration* was pending before the BIA, Tittjung filed a petition for review by this Court, seeking review of the BIA's decision affirming the deportation order. Tittjung thereafter filed a motion to dismiss his petition for review, which this Court granted on November 21, 1997.

On August 27, 1998, the BIA denied Tittjung's motion for reconsideration. On September 24, 1998, Tittjung filed the instant petition for review, seeking review by this Court of the denial of his motion for reconsideration.

## Discussion

■■■■ "The decision to grant or deny a motion to reopen or reconsider is within the discretion of the [BIA], subject to the restrictions of this section." 8 C.F.R. § 3.2. We review the BIA's decision to determine whether it was a proper exercise of this discretion. This Court's review is limited to those issues that Tittjung presented to the BIA in his motion for reconsideration. Jurisdiction does not attach to other matters relating to the underlying deportation order, which Tittjung has failed to appeal. *Chudshevid v. INS*, 641 F.2d 780, 784 (9th Cir.1981); *see also*

*Akrap v. INS,* 966 F.2d 267, 270–71 (7th Cir.1992).

■ The only issues that Tittjung presented to the BIA in his motion for reconsideration are: (1) whether the BIA's decision was erroneous in that it failed to address that the deportation statute requires that the Government prove Tittjung's fraud or willful misrepresentation of a material fact to procure a visa, which the Government failed to do; and (2) whether Tittjung's deportation should be deferred or suspended for humanitarian reasons. We address each of these arguments in turn.[2]

### A.

■ Tittjung alleges that the Immigration Court and the BIA erred in ordering him deported because they failed to reach the issue of whether he misrepresented his concentration camp guard service when he applied for a visa to enter the United States. Having established through application of collateral estoppel the fact that Tittjung served as an armed, SS Death's Head Battalion guard at a Nazi-operated concentration camp, the Immigration Court and the BIA concluded that Tittjung was deportable under the Holtzman Amendment. Tittjung argues that this conclusion was erroneous in light of this Court's decision in *Schellong v. U.S. I.N.S.,* 805 F.2d 655 (7th Cir.1986), which Tittjung reads as standing for the proposition that the Holtzman Amendment requires that the Government prove misrepresentation or fraud. This reading of

*Schellong* is flawed and Tittjung's argument is baseless.

■ Simply put, the Holtzman Amendment does not contain a fraud element. Misrepresentation is not a requirement for deportation under that act. The act mandates deportation of any alien who: "during the period beginning on March 23, 1933, and ending on May 8, 1945, under the direction of, or in association with [the Nazi government of Germany and governments allied with or controlled by it] ordered, incited, assisted, or otherwise participated in the persecution of any person because of race, religion, national origin, or political opinion...." 8 U.S.C. § 1182(a)(3)(E); 8 U.S.C. § 1227(a)(4)(D). This Court has stated on several occasions that the Holtzman Amendment provides a grounds for deportation separate from the issue of whether the individual misrepresented his wartime activities to immigration authorities. *See Kalejs v. INS,* 10 F.3d 441, 444 (7th Cir.1993); *Kulle v. INS,* 825 F.2d 1188, 1194 (7th Cir.1987). The portion of our decision in *Schellong* that Tittjung points to as stating otherwise does not even discuss the Holtzman Amendment. In that case, the Government had pressed for Schellong's deportation on two grounds: a misrepresentation theory under Section 1251(a)(1) and an assistance in persecution theory under the Holtzman Amendment. The portion of *Schellong* that Tittjung relies on comes from language discussing the misrepresentation ground. In the section that does address the Holtzman Amendment, *Schellong* explicitly states that this statute pro-

---

2. In his brief, Tittjung attacks the general application of collateral estoppel by the Immigration Court and the BIA to issues litigated and decided in the prior denaturalization proceedings. Tittjung did not raise this argument in his motion for reconsideration before the BIA, and it is therefore outside the scope of our review. Even if we were able to review it, this argument lacks any merit. This Court has repeatedly held that the doctrine of collateral estoppel is applicable in deportation proceedings such as this. *See Kairys v. INS,* 981 F.2d 937, 939 (7th Cir.1992) ("Given the

full and fair judicial hearing to which an alien is entitled in a denaturalization proceeding, there is no reason not to apply the doctrine of collateral estoppel in a subsequent deportation proceeding to bar the relitigation of facts actually litigated and necessarily determined."); *Schellong v. INS,* 805 F.2d 655, 658 (7th Cir.1986) (upholding the application of collateral estoppel in a deportation proceeding where the alien had been denaturalized based upon his service as an armed Nazi concentration camp guard).

vides "an additional independent ground of deportation," aside from any allegations of misrepresentation. *Schellong v. INS,* 805 F.2d at 660.

■ In this case, the Immigration Court and the BIA never reached the issue of misrepresentation because, having found Tittjung deportable on an assistance in persecution theory under the Holtzman Amendment, they declined to reach and adjudicate alternative grounds. Tittjung's service as an armed SS Death's Head Battalion concentration camp guard was conclusively established in the denaturalization trial.[3] *United States v. Tittjung,* 753 F.Supp. 251, 253 (E.D.Wis.1990). That fact having been established, the BIA was entirely correct in affirming his deportation, as this Court has consistently held that Nazi concentration camp guards assisted in persecution within the meaning of the Holtzman Amendment. *See Kairys v. INS,* 981 F.2d at 942–43; *Kulle v. INS,* 825 F.2d at 1192–93; *Schellong v. INS,* 805 F.2d at 661.

## B.

■ Tittjung also asserts that the BIA did not address the request in his reconsideration motion for relief from deportation for "humanitarian reasons" relating to his health. However, this claim was fully considered by the BIA during Tittjung's appeal of the deportation order. The BIA correctly held that, as an alien deportable under the Holtzman Amendment, Tittjung was statutorily ineligible for such relief. 8

3. Tittjung argues in his brief that the Immigration Court refused to consider new evidence not previously presented before any fact finder. Specifically, he points to a statement by a former prisoner of the Mauthausen concentration camp that Tittjung argues is exculpatory. Tittjung did not raise this issue in his motion for reconsideration, and hence the argument is not properly before this Court. Even if it were, the Immigration Court and the BIA more than adequately considered Tittjung's claim. They concluded, after reviewing the record and Tittjung's proposed proffer, that the new evidence was, if anything, inculpatory. Such findings of the BIA in this regard are entitled to substantial

U.S.C. § 1253(h)(2)(A) (now codified at 8 U.S.C. § 1229b(c)(4)). Inasmuch as Tittjung is barred by statute from discretionary relief, the BIA did not abuse its discretion in denying his motion for reconsideration on this issue.

Tittjung's reference to the Sixth Circuit's decision in *Petkiewytsch v. INS,* 945 F.2d 871 (6th Cir.1991), is unpersuasive. In *Petkiewytsch,* the Sixth Circuit granted relief from deportation under the Holtzman Amendment after deciding that deporting the individual would "carry out no discernable policy of the United States." *Id.* at 881. The BIA emphasized the many factual distinctions between *Petkiewytsch's* and the instant case in rejecting a previous argument by Tittjung, that deportation under the Holtzman Amendment requires a showing of personal involvement in atrocities, which he also based on language in *Petkiewytsch.*[4] (BIA Op. at 10–12). Furthermore, the application of *Petkiewytsch* to this case would conflict with the law of this Circuit. In *Schellong,* we explained that the purpose of the Holtzman Amendment is to exclude from the United States individuals who along with the Nazis "had inflicted suffering on persons because of their race, religion or political opinion.... [I]ndividuals who, armed with guns, held prisoners captive and prodded them into forced labor with threats of death or capital punishment cannot deny that they aided the Nazis in their program of racial, political, and religious oppression." And in *Kairys,* we further explained:

deference, *see Bradvica v. INS,* 128 F.3d 1009, 1012 (7th Cir.1997), and we find no reason based on our own review of the record to now call into question the application of collateral estoppel to the facts established in the prior proceedings.

4. Unlike the instant case, for example, *Petkiewytsch* involved an individual who was involuntarily conscripted into a labor education camp. This Court has previously distinguished *Petkiewytsch* along these factual lines in applying the Holtzman Amendment. *See, e.g., Kairys,* 981 F.2d at 942–43.

If the operation of such a camp were treated as an ordinary criminal conspiracy, the armed guards, like the lookouts for a gang of robbers, would be deemed coconspirators, or if not, certainly aiders and abettors of the conspiracy; and no more should be required to satisfy the noncriminal provision of the Holtzman Amendment that makes assisting in persecution a ground for deportation.

981 F.2d at 943. Tittjung's case falls squarely within the mandate of the Holtzman Amendment and the BIA properly deemed him ineligible for the relief he seeks.

## Conclusion

For the reasons stated above, we AFFIRM the BIA's denial of Tittjung's motion for reconsideration.

AFFIRMED.