**Mohamed S. NUR, Petitioner,**

v.

**John D. ASHCROFT, Respondent.**

No. 03–1577.

United States Court of Appeals, Seventh Circuit.

Argued June 16, 2004.

Decided July 6, 2004.

Maria T. Baldini-Potermin, Pollock & Associates, Chicago, IL, for Petitioner.

George P. Katsivalis, Department of Homeland Security, Office of the District Counsel, Chicago, IL, Papu Sandhu, Isaac R. Campbell, Department of Justice, Washington, DC, for Respondent.

Before COFFEY, RIPPLE, and WILLIAMS, Circuit Judges.

ORDER

Mohamed Nur, a Somalian citizen, petitioned for asylum, claiming fear of persecution based on his membership in the

Rahanweyn[1] clan. An Immigration Judge denied Nur's petition and the Board of Immigration Appeals summarily affirmed. Nur did not petition this court for review of the BIA decision and instead filed a motion to reconsider, which the BIA denied. For the reasons that follow, we affirm the BIA's denial of Nur's motion to reconsider, and deny the petition for review.

## Background

Nur, a 38–year old male born in Baido, Somalia, arrived in the United States in July 1999, gaining entry by using a false Norwegian passport. That September he applied for asylum, 8 U.S.C. § 1158, withholding of removal, 8 U.S.C. § 1231(b)(3), and relief under the United Nations Convention Against Torture, claiming that if returned to Somalia he would face persecution on account of his membership in the Rahanweyn clan. In March 2000, Nur filed a more detailed amended application. He conceded removability in response to a notice to appear from the INS, and in March 2000 the IJ held a hearing to evaluate Nur's claim.

At his hearing, Nur submitted documents showing that the Rahanweyn clan is a minority clan, and that its members have been targeted for persecution by the Hawiye, Darod, and other majority clans in Somalia. Nur believed that members of the Hawiye clan persecuted his family based on his family's clan identity. Nur testified that members of the Hawiye clan frequently robbed the store owned by his uncle. In 1992, members of the Hawiye clan raped Nur's cousin and looted his uncle's house while four armed soldiers held Nur and his uncle at gunpoint. Nur also testified that in 1994 members of the Hawiye clan forced him to come to their militia camp, but he escaped after one day. He conceded that the Rahanweyn clan also had a small militia, but stated that it was not well-organized and did not control any geographical area.

In February 1998, Nur left Somalia for Kenya; he testified that he feared the increasing violence of the civil war and feared that he would be killed by members of the Hawiye clan. Although he did not mention this in his first application, Nur testified that while in Kenya, he learned from neighbors who had left Somalia that his parents had been killed in the war and that his wife and son had died in a car accident. He testified that he also learned that his uncle and aunt and brothers had been killed. Nur testified that he left Kenya in July 1999 to come to the United States because he could not obtain residency or a work permit and because Kenya does not protect the rights of Somalis.

After hearing Nur's testimony, the IJ issued an oral decision denying Nur's applications. The IJ found Nur not credible, in part because his original application contained "exaggerated and false information." Nur, said the IJ, did not corroborate his allegations, his testimony was vague, and he did not explain why he did not mention the deaths of his parents and uncle in his original application. The IJ stated that Nur would be subject to harm only "of a general nature" in Somalia, and not based on his membership in the Rahanweyn clan. The IJ concluded that Nur was "fairly well-protected" because the Rahanweyn clan's militia had some control in Baidoa. The IJ also found that Nur had not shown a reasonable probability of future persecution. The IJ went on to say

---

1. There are alternate spellings. We refer to the clan as "Rahanweyn" because it is the spelling that Nur used.

that even if Nur qualified for ·asylum, he would deny his application as a matter of discretion because he believed that Nur left Kenya to improve his living and working conditions and thus should not have used a false passport to enter the United States. The IJ also denied Nur's application for withholding of removal and relief under the Convention Against Torture. The BIA affirmed the IJ's decision without opinion.

Nur then filed a motion to reconsider, *see* 8 C.F.R. § 1003.2(b), arguing that the BIA should not have affirmed the IJ's decision because, as relevant here, the IJ erroneously discredited his testimony and erred by finding that his fear of future persecution as not well-founded. The BIA denied the motion, stating that it had previously considered the arguments presented and declined to revisit them. Nur then filed a timely petition for review of the BIA's denial of his motion to reconsider.

### Analysis

Because Nur did not directly appeal the BIA's decision, we have jurisdiction to review only the BIA's decision denying Nur's motion to reconsider and the arguments presented in that motion. *Tittjung v. Reno,* 199 F.3d 393, 396–97 (7th Cir.1999). This court reviews those arguments under the highly deferential abuse of discretion standard. 8 C.F.R. § 1003.2(a); *Dandan v. Ashcroft,* 339 F.3d 567, 575 (7th Cir. 2003). In order to demonstrate that the BIA abused its discretion in denying his motion to reconsider, Nur must show that he raised specific errors in the motion that would entitle him to such relief. A motion to reconsider "shall state the reasons for the motion by specifying the errors of fact or law in the prior Board decision and shall be supported by pertinent authority." 8 C.F.R. § 1003.2(b)(1).

■ Nur first argues that the IJ erroneously discredited his testimony. He claims that the reasons the IJ gave for discrediting him—that his first asylum application contained "exaggerated and false information" and that he did not provide corroborating documentation to support his statements—are not supported by the record. Nur accounts for the inconsistencies between his first application and his hearing testimony by explaining that the person who prepared his first application did not speak English well. At the hearing Nur tried to clarify the confusion by explaining that although his original application stated that his father owned 73 plantations and that his sister was raped and killed by members of the Hawiye clan, his father actually owned one plantation and it was his cousin who was raped, but not killed. Nur also argues that the political situation in Somalia prevented him from obtaining documents to support his claim that his family was killed in the war.

We give great deference to an IJ's credibility determination, which will be overturned only in "extraordinary circumstances" if supported by "cogent reasons" that "bear a legitimate nexus to the finding." *See Krouchevski v. Ashcroft,* 344 F.3d 670, 673 (7th Cir.2003) (citation and internal quotations omitted).

Although the inconsistencies between Nur's application and testimony regarding his cousin and the number of plantations are adequately explained by the lack of English skills of the person who prepared the application, *see Ememe v. Ashcroft,* 358 F.3d 446, 452–53 (7th Cir.2004), the IJ's negative credibility determination is supported by a more significant inconsistency. In Nur's first application for asylum, he stated that he did not know what happened to his family and worried that they may have starved to death. But Nur later testified that he heard from neigh-

bors when he was in Kenya—before he completed his first application—that his family had been killed by members of the Hawiye clan. Nur does not explain why he did not include the information about his family being killed in his application. An IJ can view new factual assertions as evidence that an applicant is not a reliable and truthful witness. *See Oforji v. Ashcroft*, 354 F.3d 609, 614 (7th Cir.2003). Thus, the IJ did not err in concluding that Nur was not reliable based on Nur's new assertions at the hearing and his failure to explain why his application contained inconsistent information. And although corroborating evidence is not necessary when the applicant is credible, it is "essential to bolster an otherwise unconvincing case." *Uwase v. Ashcroft*, 349 F.3d 1039, 1041 (7th Cir.2003). Accordingly, the IJ's negative credibility determination is supported by legitimate reasons.

■ Next, Nur argues that even if we uphold the IJ's negative credibility determination, we can still hold that the IJ erred by finding that Nur lacked a well-founded fear of future persecution based on his membership in the Rahanweyn clan. *See* 8 C.F.R. § 208.13(b)(2)(iii). Nur argues that the IJ erred by (1) not recognizing that the Rahanweyn clan is a minority clan and thus subject to persecution from majority clans and (2) concluding that he could safely relocate to Somalia because the Rahanweyn clan protects its members.

To establish the objective reasonableness of his fear of future persecution, Nur must show, based upon credible, direct, and specific evidence, that a reasonable person in the same circumstances would fear persecution if returned to Somalia. *Oforji*, 354 F.3d at 613. "[G]eneralized conditions of hardship which affect entire populations do not rise to the level of persecution." *Capric v. Ashcroft*, 355 F.3d 1075, 1084 (7th Cir.2004).

Although Nur's membership in the Rahanweyn clan may constitute membership in a "particular social group," *Hagi–Salad v. Ashcroft*, 359 F.3d 1044, 1046 (8th Cir. 2004); *In re H-*, 21 I. & N. Dec. 337 (BIA 1996), Nur did not show that he would be persecuted based on his clan membership. Nur's best evidence of persecution by majority clans is a 1999 United Nations report, observing that members of the Rahanweyn clan are some of the main victims of "measures close to ethnic cleansing." *Situation of Human Rights in Somalia*, U.N. Economic & Social Council, 55th Sess., Agenda Item 19, ¶ 44, U.N. Doc. E/CN.4/103 (1999). The U.N. report also notes that the villages around Baidoa have been burned by rival clans, displacing the residents. *Id.* ¶ 49.

However, the record supports the IJ's conclusions that Nur would face harm due to general conditions of war and violence rather than his membership in the Rahanweyn clan, and that his clan has some control in Baidoa and can protect its members. The 1999 U.S. Department of State Country Report on Human Rights Practices for Somalia states that the Rahanweyn clan's militia regained control of the region that includes Baidoa. Much of the record evidence shows that the area around Baidoa is very volatile and many civilians have been killed; however, the Rahanweyn are both perpetrators and victims in the violence. The 2002 State Department country report discusses the Rahanweyn militia's attempts to assert control over Baidoa and does not include the Rahanweyn clan in its discussion of minority groups. In sum, although Somalia remains dangerous, it appears that the relative position of the Rahanweyn clan in Baidoa has improved. Accordingly, the IJ did not err by finding that Nur's fear of future persecution based on his clan membership was not well-founded.

Finally, Nur argues that the IJ erred by finding that he would be ineligible for asylum as a discretionary matter. The government may exercise discretion to grant asylum only if an applicant is statutorily eligible for asylum. *See Kaczmarczyk v. INS*, 933 F.2d 588, 593 (7th Cir.1991). Because Nur is not statutorily eligible for asylum, we need not address this argument.

Conclusion

For the foregoing reasons, we deny the petition for review and AFFIRM the decision of the Board of Immigration Appeals.