Svitlana GALKO, Petitioner,

v.

John D. ASHCROFT, Attorney General
of the United States of America,
Respondent.

No. 03–2898.

United States Court of Appeals,
Seventh Circuit.

Argued July 7, 2004.

Decided Aug. 31, 2004.

Kyle M. Kinzy, Kinzy & Associates, Chicago, IL, for Petitioner.

George P. Katsivalis, Department of Homeland Security Office of the District Counsel, Chicago, IL, Joshua E. Braunstein, Department of Justice Civil Division, Immigration Litigation, Washington, DC, for Respondent.

Before CUDAHY, COFFEY, and ROVNER, Circuit Judges.

## ORDER

Ukranian-native Svitlana Galko, who is Jewish, applied for asylum, alleging that she faced persecution based on religion, nationality, and social group after she formed a Jewish organization, "Sledopyt," to research the Ukrainian army's killing of its Jewish community in the late 1930s.

The immigration judge denied her petition for asylum, and the Board of Immigration Appeals affirmed, adopting the IJ's adverse credibility determination and identifying three inconsistencies in Galko's testimony. Galko did not petition us for review of the BIA's decision, but instead filed a motion for reconsideration, which the BIA denied. Our review is thus limited to the BIA's denial of the motion to reconsider, and we grant the petition.

In the early 1990s Galko formed Sledopyt with three other people to examine the Ukranian army's killing of many members of its Jewish community in 1937–38, before the Germans occupied the country. She believed that the Ukranian army murdered most of the Jewish community in her hometown of Rabaruska and buried the victims in mass graves in a nearby forest. Through Sledopyt, Galko sought to locate those mass graves and create a memorial to the victims in hopes of galvanizing the Jewish community that still lived in the town.

The military arm of Ukranian National Assembly party—the Ukranian National Self–Defense Organization—known for its anti-Semitic beliefs, tried to stop Sledopyt's activities. Upon learning about Sledopyt's activities, members of UNSO in April 1995 telephoned Galko and her group, threatening to kill them if they did not stop their research. In June two men in UNSO uniforms attacked Galko outside her house, injuring her eye, ribs, and left side of her body. Another attack occurred in September, when four UNSO men brutally beat Galko and the group while they were working in the forest; Galko was hospitalized with a concussion and bruised kidney. Galko complained about these attacks to the police and government officials without result.

Despite efforts to work clandestinely in the forest so as not to draw further attention from the UNSO, the group was detained overnight by an unidentified Ukranian military squad, whose relationship to the UNSO is not apparent from the record. According to Galko, although the squad detained the group on the pretense that they were "spies," the squad's true goal was to stop Sledopyt's research. During this detention, an officer beat Galko and threatened her.

That next night UNSO forces entered Galko's home and physically attacked her and her husband. So that the UNSO would leave their family alone, her husband told the men that Galko planned to leave the country and that they were getting a divorce. In December 1995, Galko fled the Ukraine for the United States on a six-month visa, leaving her daughter with her husband. After overstaying her visa, Galko applied for asylum in February 1997.

Galko obtained counsel and testified at a hearing before an IJ in July 1999 Her testimony largely tracked her asylum application, with four exceptions. First, Galko testified that the local government had granted official recognition to her group, contradicting her written statement that the government rejected Sledopyt's application. Second, she testified that during the June 1995 attack, the UNSO members hit her once or twice; in her application she wrote that they had kicked her until she was unconscious. Third, she testified that she suffered only an eye injury during the attack; in her application, however, she stated that she suffered a broken rib and bruises to her left side. Finally, Galko did not testify at all about the military officer kicking her while she was detained; in her application, however, she described being hit and kicked.

In an oral decision, the IJ denied Galko's application for asylum. As relevant

here, the IJ concluded that Galko was not credible, and her claims lacked corroborating documentary evidence. The BIA denied her pro se appeal.

After again securing counsel, Galko timely filed a motion for reconsideration.[1] As relevant here, Galko challenged the BIA's decision essentially on two grounds: credibility and corroboration. Regarding credibility, Galko seemed to argue that the BIA erred by construing the IJ's adverse credibility determination as based on inconsistencies in her testimony. Galko contended that the BIA then improperly made its own factual findings that her testimony contained inconsistencies, and, she argues, those inconsistencies were not in fact inconsistent. As for corroborating evidence, Galko argued that the BIA erred by not overturning the IJ's finding that Galko should have submitted corroborating evidence because the evidence was not reasonably available and she provided a credible explanation for why it was not available. The BIA denied the motion for reconsideration, concluding that Galko had not demonstrated any error in its earlier decision.

Galko timely appeals only the BIA's denial of her motion for reconsideration, so we review only those issues raised in that motion and not the underlying deportation order. *Tittjung v. Reno*, 199 F.3d 393, 396–97 (7th Cir.1999). "A motion to reconsider is a request that the Board reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." *Matter of Cerna*, 20 I. & N. Dec. 399, 402 n. 2, 1991 WL 353528 (BIA 1991) (internal quotations and citations

omitted). In a motion to reconsider, a petitioner must cite specific errors of fact or law in the BIA's decision, supported with pertinent authority. 8 C.F.R. § 1003.2(b)(1); *Zhao v. United States Dep't of Justice*, 265 F.3d 83, 90 (2d Cir. 2001). We review the BIA's denial of Galko's motion for reconsideration under the highly deferential abuse-of-discretion standard. 8 C.F.R. § 1003.2(a); *Dandan v. Ashcroft*, 339 F.3d 567, 575 (7th Cir.2003).

As a threshold matter, the government first argues that we have no jurisdiction to review Galko's petition because she fails to challenge "in any meaningful way" the BIA's denial of her motion for reconsideration. But the BIA adopted the reasoning of its prior decision, so Galko's brief, which again raises her arguments from her motion to reconsideration, meaningfully challenges the BIA's denial of the motion. *See Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir.2004); *Tittjung*, 199 F.3d at, 396–97.

The government next contends that Galko waived any challenge on appeal because her motion for reconsideration did not challenge the BIA's finding that her testimony contained three inconsistencies—inconsistencies that are alone sufficient to support the BIA's adverse credibility determination. *See Tittjung*, 199 F.3d at 396–97. But the government too narrowly construes Galko's challenge in her motion for reconsideration to the BIA's credibility determination. In that motion, Galko addressed the BIA's "sua sponte" findings of inconsistencies in her testimony. Although Galko did not elaborate on this argument, we conclude that Galko sufficiently presented it in her motion to consider, and we may review it.

---

**1.** The BIA interpreted the motion to be both one for reconsideration and for reopening. But Galko labeled her motion a motion to reconsider and made no argument that can be construed within the framework of a "motion to reopen" (such as discovery of new evidence), so we interpret her appeal to challenge only the denial of her motion for reconsideration.

■ Turning to Galko's arguments, Galko first argues that the BIA abused its discretion by refusing to consider its earlier adoption of the IJ's erroneous credibility determination. Galko contends that the IJ's credibility determination was flawed because the IJ did not provide any specific, cogent reason for her conclusion or even point to any inconsistencies in Galko's testimony. Instead the IJ generally considered whether Galko's testimony was "rational, internally consistent, and whether her testimony [was] inherently persuasive" and determined that she was "essentially not credible."

Because a credibility determination is a question of fact, we overturn such an assessment only in extraordinary circumstances. *Pop v. INS*, 270 F.3d 527, 530–31 (7th Cir.2001). But an IJ must support his credibility determination with "specific, cogent reasons that bear a legitimate nexus to the finding," which the IJ here failed to do. *Id.* at 531 (internal quotations and citation omitted); *see Ahmad v. INS*, 163 F.3d 457, 461 (7th Cir.1999). Nowhere in the IJ's decision did she explain why Galko's testimony was not rational, internally consistent, or inherently persuasive, so the IJ provided no basis on which to uphold her determination.

In addition, Galko takes issue with the IJ's finding that Galko failed to provide reasonably available corroborating evidence, such as (1) her degree from college; (2) her employment; (3) her organization's existence; (4) the permission granted to examine the archives at Lvov; and (5) a connection between her injuries and the UNSO who allegedly caused them. Challenging this finding, Galko contends that the IJ improperly sought direct medical evidence linking her injuries to the UNSO even though the BIA has recognized that evidence explicitly implicating the persecutor is rarely available, *In re S–M–J*, 21 I & N Dec. 722, 725 (BIA 1997). She also argues that the IJ overlooked her explanation that official documents were not available. Hence Galko concludes that the BIA abused its discretion by refusing to reconsider its earlier decision adopting the IJ's analysis.

When corroborating evidence would reasonably be available and accessible to the applicant (e.g., evidence verifying place of birth and medical records), the applicant should provide it or explain why the information was not presented. *In re S–M–J*, 21 I & N Dec. at 725–26; *see Capric v. Ashcroft*, 355 F.3d 1075, 1085–86 (7th Cir. 2004); *Malhi v. INS*, 336 F.3d 989, 993 (9th Cir.2003). Conversely, if certain corroborating evidence is not reasonably available or the petitioner provides a credible explanation for why it is unavailable, such evidence is not required. *In re S–M–J*, 21 I. & N. Dec. at 725; *Capric*, 355 F.3d at 1085–86.

We agree with Galko that the documents sought by the IJ were either not reasonably available or that Galko provided a credible explanation for their absence. First, the IJ's emphasis on the absence of a formal diploma was unnecessary because the degree was not relevant to any material facts of her asylum application. *See Uwase v. Ashcroft*, 349 F.3d 1039, 1143 (7th Cir.2003). Next, even though Galko explained that the Ukranian postal rules restrict the transport of certain documents without official permission and submitted a copy of these rules, the IJ did not mention why she did not credit this explanation for Galko's inability to obtain her work record; official registration for her organization; and the day pass to the Lvov archives. Though the lack of corroborating evidence regarding Sledopyt's existence may have been a basis for discounting Galko's testimony, the IJ still needed to address Galko's explanation about the unavailability of

the documents. See *Gontcharova v. Ashcroft,* 384 F.3d 873 (7th Cir.2004*).* Finally, IJ's demand for a direct link between Galko's injuries and their source was unreasonable because such direct evidence from the hands of a persecutor is rarely available. *In re S–M–J,* 21 I. & N. Dec. at 725; *see Korniejew v. Ashcroft,* 371 F.3d 377, 387 (7th Cir.2004) ("We trust that IJs will not continue to insist on corroborating evidence when common sense and institutional experience suggest that there is none to be had."). Moreover, Galko's production of her "Certificate of Temporally Inability to Work," (presumably a government disability form) corroborated that Galko was attacked by "unidentified individuals," a description which would not be inconsistent with the individuals of the UNSO. In view of the IJ's seeking of documents that were not reasonably available, her failure to explain her discrediting of Galko's explanation, and the IJ's lack of reason for her adverse credibility determination, we conclude that the BIA erred in adopting the IJ's credibility determination. *See Ememe v. Ashcroft,* 358 F.3d 446, 453 (7th Cir.2004) (reversing IJ's credibility determination and recognizing that, if a petitioner is later found to be credible, then failure to submit corroborating evidence will not be fatal).

Turning to the BIA's order supplementing the IJ's credibility determination with additional findings of its own, Galko argues that 8 C.F.R. § 1003.1(d)(3)(i) (2003) prohibits the BIA from making its own findings, and so the purported inconsistencies it identified could not sustain the BIA's denial of her claim. The regulation Galko cites, § 1003.1(d)(3)(i), states that the BIA "will not engage in de novo review of findings of fact determined by an immigration judge"; rather the BIA is limited to determining whether the IJ's factual findings, "including findings as to the credibility of testimony" are "clearly erroneous." Un-

der this regulation, Galko argues, the BIA had no authority to make its own findings of fact, but instead was obligated to remand her claim to the IJ if the BIA concluded that the IJ's reasoning was not sufficient. But the regulation Galko cites does not apply to appeals such as Galko's that were filed before September 25, 2002. *See* 8 C.F.R. § 1003.3(f) (2003). The applicable standard of review here authorizes the BIA to conduct de novo review. *See* Board of Immigration Appeals: Procedural Reforms to Improve Case Management, 67 Fed.Reg. 54, 878, 54, 898–99 (Aug. 26, 2002).

Because the BIA was allowed to make "de novo" findings to supplement the IJ's credibility determination, Galko can succeed on her claim only if the BIA abused its discretion by failing to reconsider its own findings when it denied Galko's motion. Galko argues that the BIA erred in refusing to reconsider these findings because the testimony that the BIA claimed in its earlier opinion was inconsistent was in fact not inconsistent. According to Galko, her testimony and her statement may not match word for word but the discrepancies identified by the BIA were either minor or explained by linguistic difficulties. Specifically, Galko dismisses the significance of the BIA's following three findings concerning whether she consistently testified about (1) the official recognition of her organization, (2) her June 1995 attack and the injuries she suffered, and (3) her detention:

> First, the respondent testified that the group she formed to document and memorialize the local massacre of Jews by Ukranian nationalists before World War II received official recognition by the city government. By contrast, her written application states that the group's registration was rejected and she therefore acted informally. Second, the re-

spondent testified at her hearing that during her first violent encounter with Ukranian nationalists she was struck once in the face, and perhaps again although she was not sure, and that she later sought medical treatment for an injured eye. Again, her written account differs. She claimed in her asylum application that during the first attack, she was struck in the face but then fell to the ground where she was kicked until she became unconscious. When she awoke, she realized that her left side was bruised and her rib was broken, requiring her to stay home for two weeks. Finally, the respondent testified at her hearing that following her arrest by soldiers, she was questioned at militia headquarters. Her interrogators pushed her chair causing her to fall. They hit her in the face with such force that she struck the wall. She mentioned no other abuse. Once again, her written version differs. Her application maintains that after her arrest by a military squad, she was placed in a cell at the city Board of Internal Affairs. Her interrogator hit her, and after she fell to the floor, he began kicking her.

Turning first to the BIA's findings concerning the June attack, Galko is correct that the purported discrepancies amount to minor omissions that are insufficient to support an adverse credibility determination. *See Korniejew,* 371 F.3d at 386–87 (reminding IJs that adverse credibility determinations should not be grounded in trivial details and easily explained discrepancies.) With regard to Galko's description of the June attack, the BIA focused only on the trivial detail that Galko failed to mention she was kicked in addition to hit. Differences in Galko's description of the injuries she suffered during the June attack are also insignificant because her medical record corroborates that she suffered both injuries to her eye, as she testi-

fied to at the hearing, and to her ribs, as she wrote in her statement (in addition to bruises to her face and left side of her body). *See Uwase,* 349 F.3d at 1043. And Galko's written description of her rib as "broken" even though her medical record confirmed it was bruised could be explained by her readily apparent difficulties with the English language, which neither the IJ nor the BIA took into account. *See Ememe,* 358 F.3d at 452; *Aguilera–Cota v. U.S. Immigration and Naturalization Serv.,* 914 F.2d 1375, 1382 (9th Cir.1990) (IJs cannot expect forms to be as comprehensive and thorough as a legal brief when filled out frequently by unrepresented applicants who do not speak English).

The inconsistency that the BIA identified concerning Galko's description of her detainment is even more trivial and also cannot sustain an adverse credibility determination. *See Korniejew,* 371 F.3d at 386–87. As far as we can discern, the only discrepancy in Galko's testimony again concerns her failure to mention that she was kicked in addition to hit while detained.

The inconsistency concerning whether Sledopyt was officially recognized, however, warrants closer attention. Galko denies baldly that any inconsistency exists. But she did testify that her group was officially recognized even though her written statement asserted that the government had withheld recognition.

That said, the validity of one out of the three inconsistencies that the BIA identified is not enough to uphold the BIA's denial of Galko's motion to reconsider. The BIA in its earlier decision determined that the "three discrepancies undermine[d] the respondent's claim" "when considered together," so just one valid discrepancy cannot sustain the BIA's credibility determination. Because the BIA's earlier deci-

sion contained errors that undermined its conclusion, the BIA abused its discretion when it denied Galko's motion to reconsider. *See Georgis v. Ashcroft,* 328 F.3d 962, 970 (7th Cir.2003) (refusing to defer to IJ's credibility determination after concluding that five out of the IJ's six reasons were erroneous); *see also Korniejew,* 371 F.3d at 386–87 (upholding the BIA's adverse credibility determination but noting with disapproval the increasing reliance by the BIAs and the IJs on "perceived inconsistencies in testimony and upon lack of corroboration").

For the foregoing reasons, the petition for review is GRANTED, and the judgment of the BIA is REVERSED and REMANDED for further proceedings consistent with this order.