In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2442

United States of America,

Plaintiff-Appellee,

v.

Anton Tittjung,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 89-C-1068--John W. Reynolds, Judge.

Argued November 9, 2000--Decided December 15, 2000

Before Flaum, Chief Judge, and Ripple and Kanne,
Circuit Judges.

Flaum, Chief Judge.  On December 14, 1990, the
District Court for the Eastern District of
Wisconsin determined that Anton Tittjung's
position as a Nazi concentration camp guard
during World War II invalidated his previously
issued visa. Therefore, the court revoked
Tittjung's citizenship and cancelled his
certificate of naturalization. This Court
affirmed that decision. On March 24, 1994, the
Immigration Court ordered the deportation of
Tittjung, pursuant to the Holtzman Amendment, 8
U.S.C. sec. 1227(a) (4)(D) (formerly 8 U.S.C.
sec. 1251(a)(4)(D)). The Board of Immigration
Appeals ("BIA") affirmed the Immigration Court's
decision, and this Court affirmed the decision of
the BIA. On January 10, 2000, almost six years
after his deportation was first ordered, Tittjung
filed a motion to dismiss, pursuant to
Fed.R.Civ.P. 60(b)(4), seeking to vacate the
district court's 1990 order. The district court
denied Tittjung's motion to dismiss. For the
reasons stated herein, we affirm the district
court's decision.

I.  BACKGROUND

Anton Tittjung was born in Erdud, Yugoslavia on
November 17, 1924. Beginning in October of 1942,
and for the duration of World War II, Tittjung
served in the Waffen SS, an organization of the

Nazi government. Specifically, Tittjung was a member of the Totenkopf-Sturmbann (Death's Head Battalion), where he operated as an armed guard at the Mauthausen concentration camp and its subcamp Gross Raming./1

In 1952, Tittjung applied for and obtained a visa to enter the United States pursuant to the Displaced Persons Act of 1948 ("DPA"). At no point during the application process did Tittjung disclose his association with the SS Death's Head Battalion nor his participation in Nazi persecution as a concentration camp guard. Tittjung applied for naturalization in 1973, once again concealing his Nazi wartime service. On January 9, 1974, Tittjung was naturalized and became a citizen of the United States.

On September 1, 1989, the government filed a complaint against Tittjung asking the District Court for the Eastern District of Wisconsin to revoke Tittjung's citizenship. The request for revocation was based on evidence which revealed Tittjung's history as a member of the Waffen SS and an armed concentration camp guard at Mauthausen and Gross Raming. The government moved for summary judgment, arguing that Nazi concentration camp guards were ineligible for visas under the DPA, and that as a result, Tittjung's citizenship was illegally procured. On December 14, 1990, the district court granted the government's motion. See Tittjung, 753 F.Supp. at 251. The court held that as a concentration camp guard, Tittjung had assisted in the persecution of persons because of their race, religion, or national origin. Because the DPA, as amended in 1950, made all persons who assisted Nazi Germany in the persecution of civilian populations of countries ineligible for visas, Tittjung was ineligible for a visa when he entered the United States. To be eligible for naturalization, a person must have been lawfully admitted into the United States with a valid immigration visa. See 8 U.S.C. sec. 1427(a)(1). The court determined that because Tittjung's visa was invalid, he was never lawfully admitted into the United States. Since Tittjung had not satisfied the prerequisites for naturalization, the court revoked his citizenship, set aside its January 9, 1974 order admitting Tittjung to citizenship, and cancelled Tittjung's certification of naturalization. See Tittjung, 753 F. Supp. at 256-57. Because Tittjung's guard service required his denaturalization as a matter of law, the district court did not address allegations that Tittjung misrepresented his World War II service to visa officials and thereby entered the United States by means of fraud. Id. at 257. This Court affirmed the district court's order in an opinion dated November 14, 1991, 948 F.2d 1292 (7th Cir.

1991), and the Supreme Court thereafter denied certiorari, 505 U.S. 1222 (1992).

As a result of the district court's 1990 decision, Tittjung reverted to alien status and was thus removable. On May 11, 1992, the government commenced deportation proceedings against Tittjung. The Immigration Court, on March 24, 1994, ordered Tittjung's deportation pursuant to the Holtzman Amendment./2 Tittjung appealed the decision of the Immigration Court to the BIA. On August 13, 1997, the BIA affirmed the deportation order and dismissed Tittjung's appeal. Tittjung then filed a motion for reconsideration, which the BIA denied on August 27, 1998. On December 2, 1999, this Court affirmed the BIA's decision. Tittjung v. Reno, 199 F.3d at 393, reh'g denied, No. 98-3407 (Feb. 9, 2000). On June 29, 2000, the Supreme Court denied certiorari. ___ U.S. ___, 120 S.Ct. 2746.

Faced with an imminent deportation, Tittjung filed a motion with the District Court for the Eastern District of Wisconsin, seeking to vacate the 1990 denaturalization judgment and dismiss the complaint. Tittjung argued that the 1990 judgment was void under Fed.R.Civ.P. 60(b)(4) on the ground that the district court lacked subject matter jurisdiction. On April 27, 2000, that motion was denied by the district court. Tittjung now appeals, arguing that: (1) there is no Article III jurisdiction to redetermine visa eligibility, and on that basis find that Tittjung was not lawfully admitted when he was granted citizenship; (2) it is an unconstitutional encroachment into an executive function for the judiciary to redetermine visa eligibility; (3) since the DPA is no longer in effect, the district court cannot make a finding of visa ineligibility and unlawful admission based on that law; (4) the court had to make certain factual findings, including that Tittjung made a misrepresentation in order to obtain a visa, before it could hold that he illegally obtained a visa and was thus not "lawfully admitted."

II. DISCUSSION
A. Rule 60(b)(4) Standard of Review

Tittjung's present motion challenges the jurisdiction of the District Court for the Eastern District of Wisconsin to determine that he was visa ineligible when he entered the United States in 1952. No court may decide a case without subject matter jurisdiction, and neither the parties nor their lawyers may stipulate to jurisdiction or waive arguments that the court lacks jurisdiction. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 818 (1988); Indiana Gas Co. v. Home Ins. Co., 141 F.3d 314

(7th Cir. 1998); see also United States v. County of Cook, Ill., 167 F.3d 381, 387-88 (7th Cir. 1999). To further that end, "It is the duty of this court to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.'" EEOC v. Chicago Club, 86 F.3d 1423, 1428 (7th Cir. 1996) (citing Mitchell v. Maurer, 293 U.S. 237, 244 (1934)). Therefore, if the parties neglect the subject, a court must raise the jurisdictional question on its own. Christianson, 486 U.S. at 818. However, in unexceptional circumstances, a party that has had an opportunity to litigate the question of subject matter jurisdiction may not reopen that question in a collateral attack following an adverse judgment. See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 n.9 (1982).

The exception to the general rule barring collateral attacks on subject matter jurisdiction flows from Fed.R. Civ.P. 60(b)(4)./3 Yet that exception is narrowly tailored, such that a lack of subject matter jurisdiction will not always render a final judgment "void." Only when the jurisdictional error is "egregious" will courts treat the judgment as void. In re Edwards, 962 F.2d 641, 644 (7th Cir. 1992). To be egregious, and thus void under Rule 60(b)(4), the error must involve a clear usurpation of judicial power, where the court wrongfully extends its jurisdiction beyond the scope of its authority. See O'Rourke Bros., Inc. v. Nesbitt Burns, Inc., 201 F.3d 948, 951 (7th Cir. 2000); Edwards, 962 F.2d at 644; Kansas City S. Ry. v. Great Lakes Carbon Corp., 624 F.2d 822, 825 (8th Cir. 1979). "If it is not egregious, the courts say that the court that issued the judgment in excess of its jurisdiction had jurisdiction to determine jurisdiction, and its jurisdictional finding, even if erroneous, is therefore good against collateral attack, like any other erroneous but final judgment." Edwards, 962 F.2d at 644. Here, the district court did not find any jurisdictional errors let alone egregious ones. We review de novo the denial of a motion to vacate a judgment as "void" under Fed.R.Civ.P. 60(b)(4). Federal Election Comm'n v. Al Salvi for Senate Comm., 205 F.3d 1015 (7th Cir. 2000).

B. Tittjung's Jurisdictional Arguments
1. The District Court's Jurisdiction to Review a Visa

Tittjung's overarching claim on appeal is that a district court lacks subject matter jurisdiction to review a visa eligibility determination and on that basis vacate an order of naturalization. We note at the outset that Tittjung's status as visa eligible has been at

issue in Article III proceedings for approximately eleven years to date. To say that Tittjung has had ample opportunity to raise this issue is to understate the matter. Moreover, Tittjung has previously admitted that the courts do have jurisdiction to examine his visa eligibility. The original complaint, filed in 1989, specifically alleged that the district court had jurisdiction pursuant to 28 U.S.C. sec. 1345 (original jurisdiction over all civil actions brought by the government) and 8 U.S.C. sec. 1451(a) (jurisdiction to revoke citizenship). Tittjung admitted that allegation, and has never challenged the district court's determination that it had jurisdiction, either in this Court or in the Supreme Court. Therefore, unless an error of the aforementioned egregious nature has been made, res judicata bars Tittjung's claim. See County of Cook, Ill., 167 F.3d at 388.

We begin with 8 U.S.C. sec. 1451(a). That statute expressly confers jurisdiction upon district courts to decide suits brought to revoke citizenship illegally procured. Specifically, the statute reads in relevant part that:

It shall be the duty of the United States Attorney for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any district court of the United States in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and cancelling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation, and such revocation and setting aside of the order admitting such person to citizenship and such canceling of certificate of naturalization shall be effective as of the original date of the order and certificate, respectively. . ."

Tittjung argues that 8 U.S.C. sec. 1451(a) is inapplicable to his situation, as he did not illegally procure his citizenship. According to Tittjung, if any illegality took place, it was at the visa procurement phase, when Tittjung did not disclose his service as a concentration camp guard. Yet those actions, he urges, are in effect shielded from review, as he claims that his certificate of naturalization was based on compliance with all applicable provisions. Thus, when the district court in 1990 determined Tittjung to be visa ineligible and therefore revoked his citizenship, the court, he suggests,

traveled beyond the scope granted by 8 U.S.C. sec. 1451(a).

We do not believe, nor have we found any case law to suggest that a certificate of naturalization acts as a tabla rosa, thereby precluding us from examining the validity of the visa upon which that certificate was granted. To begin with, Supreme Court precedent forecloses that argument. In Fedorenko v. United States, the Court was called upon to decide whether Fedorenko's citizenship was illegally procured, and therefore subject to revocation. 449 U.S. 490 (1981). As in the case of Tittjung, Fedorenko entered the United States under the DPA, was naturalized years later, and was having his citizenship challenged on the basis that his service as a concentration camp guard rendered him visa ineligible. See id. at 508-09 ("[T]he Government [was] seeking to revoke petitioner's citizenship because of the alleged unlawfulness of his initial entry into the United States."). After the Court determined that Fedorenko's World War II service made him ineligible for a visa, it perceived the resolution of the case to be "fairly straightforward." Id. at 514. Justice Marshall, writing for the Court noted that Supreme Court "cases have established that a naturalized citizen's failure to comply with statutory prerequisites for naturalization renders his certificate of citizenship revocable as 'illegally procured' under 8 U.S.C. sec. 1451(a)." Id. The Court observed that the statutory prerequisites required that the individual be lawfully admitted to the United States for permanent residence, 8 U.S.C. sec. 1427, and that "lawful admission for permanent residence in turn required that the individual possess a valid unexpired immigrant visa." Id. at 514-15; see also 8 U.S.C. sec. 1181(a). Because the DPA excluded from the definition of displaced persons eligible for immigration to this country those who had "assisted the enemy in persecuting civil[ians]" or had "voluntarily assisted the enemy forces . . . in their operations," Pub. L. No. 87-774, ch. 647, 62 Stat. 1009, amended by Pub. L. No. 81-555, ch. 262, 64 Stat. 219 (1950), Fedorenko's visa, granted under the DPA, was invalid at the time of issuance. Thus, the Court found that 8 U.S.C. sec. 1451(a) provides a federal court with jurisdiction to make a determination of visa eligibility at the time of entrance into the United States and revocation of citizenship based on a finding of visa ineligibility.

We find that Supreme Court precedent controls and forecloses the type of claim that Tittjung now raises. In addition, though we have not to this point expressly addressed this type of

jurisdictional argument, we find our previous decisions upholding the revocation of naturalization certificates based on visa ineligibility to be de facto confirmation that Tittjung's argument is meritless. As stated above, "[i]t is the duty of this court to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,'" EEOC 86 F.3d at 1428, such that if the parties neglect the subject, a court must raise the jurisdictional question on its own, Christianson, 486 U.S. at 818. In United States v. Schmidt, 923 F.2d 1253 (7th Cir. 1991), as well as in United States v. Ciurinkas, 976 F. Supp. 1167 (N.D. Ind. 1997), aff'd, 148 F.3d 729 (7th Cir. 1998) and United States v. Hajda, 963 F. Supp. 1452 (N.D. Ill. 1997), aff'd 135 F.3d 439 (7th Cir. 1998), we were faced with denaturalization orders based on determinations of visa ineligibility. That we reached the merits in those cases casts into doubt any suggestion that we do not believe there is jurisdiction to find visa ineligibility and thus revoke a certificate of naturalization./4

As we have just noted, this specific subject matter jurisdiction argument has been resolved repeatedly. However, to the extent that previous decisions of this Court may have left the matter unclear, we now state unequivocally that Article III courts have jurisdiction to vacate an order of naturalization when that order is based on an illegally obtained visa. Here, Tittjung's status as a former concentration camp guard made him ineligible to receive a visa. Fedorenko, 449 U.S. at 511, 514. Therefore, when Tittjung entered this country, he did so with an invalid visa. By entering this country with an invalid visa, Tittjung failed to gain lawful admission to the United States. See 8 U.S.C. sec. 1181(a)(1); Fedorenko, 449 U.S. at 514-15. Because Tittjung could not be naturalized until he had first been lawfully admitted for permanent residence, see 8 U.S.C. sec. 1427(a)(1), his citizenship was illegally procured. Thus, the district court had the power to revoke his certificate of naturalization and cancel his citizenship. See 8 U.S.C. sec. 1451(a). Consequently, we agree with the court below that there was no jurisdictional error, let alone an egregious one, in the 1990 actions of the district court.

2.   Separation of Powers and Jurisdiction

In addition to the primary subject matter jurisdiction contention set forth above, Tittjung presents a number of arguments which he believes negate any federal jurisdiction conferred by 8 U.S.C. sec. 1451(a). Tittjung's first such argument is that the district court's

redetermination of visa eligibility and declaration that admission was unlawful "is an unconstitutional judicial encroachment into an exclusive Executive function . . . and it violates the constitutional doctrine of Separation of Powers." For support to his argument, Tittjung looks to language in the Immigration and Nationality Act of 8 U.S.C. sec. 1101 et seq. ("1952 Act"). Under Section 1103(a)(1) "The Attorney General shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens. . ." Additionally, Tittjung cites to Section 1103(c), which empowers the Commissioner of Immigration with any and all responsibilities of the Attorney General that the Attorney General delegates to her, and Section 1104(a), which charges the Secretary of State with the administration and enforcement of the Act and other laws "except those powers, duties, and functions conferred upon the consular officers relating to the granting and refusal of visas." Thus, Tittjung puts forth that Article III courts are without jurisdiction to proceed in reviewing visas and cancelling certificates of naturalization based on their findings of visa ineligibility.

Tittjung's argument is without merit. While Tittjung is correct that our system does delegate specific powers to specific branches of government, he fails to acknowledge that ours is a system of checks and balances. Under Article 1, Section 8 of the United States Constitution, Congress is empowered to establish standards for immigration. The 1952 Act delegates to the Executive Branch, and specifically the Attorney General, the powers of administration and enforcement. In such a situation, "[t]he courts, when a case or controversy arises, can always 'ascertain whether the will of Congress has been obeyed' and can enforce adherence to statutory standards." See Immigration and Naturalization Service v. Chadha, 462 U.S. 919, 954 (1983) (citing Yakus v. United States, 321 U.S. 414, 425 (1944) and Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 585 (1952)). The Court in Fedorenko acknowledged this mandated interplay between the branches as well as the power of Article III courts to review "lawful admissions." Justice Marshall, writing for the Court noted "This judicial insistence on strict compliance with the statutory conditions precedent to naturalization is simply an acknowledgment of the fact that Congress alone has the constitutional authority to prescribe rules for naturalization, and the courts' task is to assure compliance with the particular prerequisites to the acquisition of United States citizenship by naturalization legislated to safeguard the integrity of this

priceless treasure." Fedorenko, 449 U.S. at 506–07 (internal quotation omitted).

We stated above that Article III courts do have the power, in the course of determining whether the statutory prerequisites for naturalization have been met, to examine visa eligibility. Were we to hold that separation of powers bars examination of visa eligibility by Article III courts, we would be substantially limiting the impact of 8 U.S.C. sec. 1451. Contrary to Tittjung's assertion, the fact that Congress delegated authority to the Executive to oversee matters of immigration does not mean that the Attorney General was provided with exclusive control for the entire area. Section 1451(a) allows for the district courts to, among other things, revoke or set aside certificates of naturalization (which are based on compliance with statutory prerequisites such as a valid visa). Furthermore, Congress recognized that the Judiciary and the Executive would both make denaturalization decisions. It is for that reason that 8 U.S.C. sec. 1451(h) provides that "Nothing contained in this section shall be regarded as limiting, denying, or restricting the power of the Attorney General to correct, reopen, alter, modify, or vacate an order naturalizing the person." Given this limitation on the power of the Judiciary, the district court was correct to determine that the 1990 revocation of Tittjung's naturalization does not substantially or unconstitutionally infringe on the Attorney General's authority./5 Thus we find no jurisdictional defect, egregious or otherwise in the 1990 district court's actions.

3.  Expiration of the DPA and Jurisdiction

Tittjung next argues that the district court lacked jurisdiction to consider his unlawful entry in 1952 because the Immigration Act of 1924 and the DPA (the laws pursuant to which he was granted his visa) were no longer in effect at the time of his naturalization in 1974. Specifically, Tittjung claims that because these statutes did not exist and were not considered when the Milwaukee court entered its citizenship order in 1974, it was nonsensical for the district court to reference and apply those laws during the denaturalization proceedings./6 In support of his position, Tittjung cites to Ex Parte McCardle, where the court determined that the passage of a bill repealing the portion of a statute that conferred appellate jurisdiction on the Supreme Court over habeas proceedings meant that the Court no longer had jurisdiction to hear McCardle's appeal. 74 U.S. 506 (1868).

What, then, is the effect of the repealing act

upon the case before us? We cannot doubt as to this. Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause. And this is not less clear upon authority than upon principle.

Id. at 514.

Tittjung's position lacks merit. Throughout his argument, Tittjung goes to great lengths to suggest that his naturalization should not be tied to whether he lawfully procured his visa. Rather, he suggests the relevant factor to be that he complied with the statutory prerequisites to naturalization. While we have noted that the district court had jurisdiction to revoke Tittjung's certificate of naturalization after determining that he was visa ineligible as a matter of law, we have never wavered from our understanding that the basis for the determination that Tittjung was removable was that he was never lawfully admitted to this country, a required prerequisite to naturalization under 8 U.S.C. sec. 1427. That statute, which is ultimately the relevant one for purposes of determining naturalization, was in effect in 1974 when Tittjung was naturalized as well as when this denaturalization case was brought and decided./7

In addition, the Supreme Court's analysis in Fedorenko makes clear that lawful admission is based on circumstances as they existed at the time of initial entry. The Court, in denaturalizing Fedorenko, looked to the law that existed when he first entered the United States. "Lawful admission for permanent residence in turn required that the individual possess a valid unexpired immigrant visa. At the time of petitioner's initial entry into this country, sec. 13(a) of the Immigration and Nationality Act of 1924, ch. 190, 43 Stat. 153, 161 (repealed in 1952), provided that '[n]o immigrant shall be admitted to the United States unless he (1) has an unexpired immigration visa . . . .'" Fedorenko, 449 U.S. at 514-15. Applying Tittjung's present argument would mandate the conclusion that the Court in Fedorenko erred by revoking a naturalization because the law that allowed for the initial entry of the defendant was no longer in effect at the time of the denaturalization. We do not believe it would be proper to reach such a conclusion.

Not only would granting Tittjung's argument require us to challenge Supreme Court precedent, but doing so would also erode a large portion of

18 U.S.C. sec. 1451(a). The DPA was in existence for four years from 1948-1952. The statutory prerequisite for naturalization is five years of continuous legal residence in the United States. 8 U.S.C. sec. 1427. Therefore, no person could have been admitted to the United States under the DPA and been naturalized within the period of the law's existence. As such, according to Tittjung's position, denaturalization proceedings under 8 U.S.C. sec. 1451(a) could never be brought against one who entered under the DPA. Given that the DPA was "intended to prevent those who contributed to the Nazi persecution of innocent civilians from obtaining visas to enter the United States as refugees," Schmidt, 923 F.2d at 1259, it would seem anomalous that the law provides uncontestable permanent residence for those who illegally circumvented it. For these reasons, we conclude that the district court committed no error in cancelling Tittjung's naturalization which was based on illegal entry under the DPA.

4.  Factual Findings as Prerequisites to Jurisdiction

Tittjung posits that even if this Court does not agree that his previous arguments negate federal jurisdiction, the district court's omission of certain factual findings precludes a determination that Tittjung illegally procured his citizenship. The court below found this argument to be "a substantive one which is precluded by res judicata and cannot be grafted upon a motion to dismiss for lack of subject matter jurisdiction." Yet, in support of the proposition that certain factual findings are within the scope of a Rule 60(b)(4) review on subject matter jurisdiction, Tittjung cites to language in Fedorenko which states that "In the lexicon of our cases, one of the jurisdictional facts upon which the grant [of citizenship] is predicated, was missing at the time petitioner became a citizen." 449 U.S. at 515-16 (internal quotation omitted). As we noted above, the term jurisdiction has so many uses that it is commonplace for confusion to ensue regarding the term. See United States v. Krilich, 209 F.3d 968, 971 (7th Cir. 2000); see also Steel Co., 523 U.S. at 90. While we express doubt that this argument of Tittjung's is jurisdictional such that it properly comes within the scope of our review of a motion to dismiss for lack of subject-matter jurisdiction, we assume arguendo that it does and proceed to analyze the claim.

Tittjung asserts that the district court was required to find that "Tittjung made a material misrepresentation under DPA sec. 10," and "that the invalid visa resulted in an unlawful

admission," in order to find that Tittjung illegally procured his citizenship. We do not dispute that the language of sec. 10 of the DPA states that "Any person who shall willfully make a representation for the purposes of gaining admission into the United States as an eligible displaced person shall thereafter not be admissible into the United States." Nor do we contest that Fedorenko makes clear that under sec. 13(a) of the Immigration and Nationality Act of 1924, "a visa obtained through a material misrepresentation [is] not valid." 449 U.S. 515. However, we do not read sec. 10 of the DPA and sec. 13(a) of the 1924 Act as establishing an exclusive basis for visa ineligibility. To adopt Tittjung's reasoning, we would be forced to ignore the plain language of sec. 13(a) of the DPA as amended in 1950, something we cannot do. That Section states that "No visas shall be issued under the provision of this Act, as amended . . . to any person who advocated or assisted in the persecution of any person because of race, religion, or national origin." Section 13(a) does not contain a fraud element, but rather provides wholly independent grounds for denaturalization. The district court in 1990 was well within its authority to find that Tittjung's service as an armed concentration camp guard meant that he had assisted in the persecution of persons because of their race, religion or national origin,/8 and that his "assistance in persecution" rendered him visa ineligible. Once that determination was made, the court did not and was under no obligation to assess whether Tittjung had made misrepresentations in order to procure his visa.

Requiring a finding of misrepresentation in order to determine illegal procurement would not only be inconsistent with the plain meaning of the DPA, but would be in direct conflict with previous federal case law on the matter. The approach taken in Tittjung, that once a determination of visa ineligibility is made on "assistance in persecution" grounds there is no need to address a possible "misrepresentation" basis for ineligibility, has been continually applied. For example, in Schmidt, after determining that the defendant had assisted in persecution thus making him ineligible for a visa and mandating his denaturalization, the district court found it unnecessary to decide whether he also entered unlawfully by misrepresenting such service to immigration authorities. See United States v. Schmidt, No. 88 C 9475, 1990 WL 6667 at *2 (N.D. Ill. Jan 3, 1990). Similarly, in Leprich, the court noted that the visa of a concentration camp guard "would have been illegally procured under [DPA] Section 13 even if he had secured it without making

misrepresentations." 666 F. Supp. at 969. See also United States v. Kairys, 600 F. Supp. 1254, 1265-66 (N.D. Ill. 1984) (Kairys was visa ineligible even though there was insufficient proof of misrepresentation.). In light of this consistent approach, as well as because of the plain meaning of sec. 13(a) of the DPA, we hold that the district court was able to find that Tittjung illegally procured his citizenship without making the suggested factual finding. To the extent that Tittjung urges that the factual finding of misrepresentation was "jurisdictional" we see no jurisdictional error, let alone an egregious one, in the method employed by the district court in its 1990 decision.

5. Tittjung's Additional Arguments

Finally we note that Tittjung's brief contains factual arguments, many of which were presented in the district court. The fact issues surrounding Tittjung's cases have already been determined, and are therefore outside the scope of review of a collateral attack on subject matter jurisdiction. In an effort to have this court address these claims Tittjung labels these arguments "jurisdictional." However, Tittjung cannot bring his arguments on the merits within this Rule 60(b)(4) review simply by relabelling them "jurisdictional." Therefore, we do not address these arguments.

III. CONCLUSION

The principle that jurisdictional defects may be noticed at any time is limited . . . by the equally important principle that litigation must have an end. After a case has become final by exhaustion of all appellate remedies, only an egregious want of jurisdiction will allow the judgment to be undone by someone who, having participated in the case, cannot complain that his rights were infringed without his knowledge.

In re Factor VIII or IX Concentrate Blood Prod. Lit., 159 F.3d 1016, 1019 (7th Cir. 1998). We have examined Tittjung's claims extensively, recognizing the gravity of the ramifications of our decision. Our exhaustive inspection leads us to conclude that those claims have no merit. As such, it is time for the principle that "litigation must have an end" to prevail. We believe that now, more than ten years since these proceedings began and approximately 48 years since the illegal entry occurred, the time has come for the Immigration Court's order of deportation to be carried out. We see no reason for further delay.

For the foregoing reasons, we Affirm the decision

of the district court.

/1 The facts concerning Tittjung's service during World War II are laid out in greater detail in our prior decision affirming the BIA's denial of Tittjung's motion for reconsideration, Tittjung v. Reno, 199 F.3d 393, 395 (7th Cir. 1999), as well as in the opinion by the District Court for the Eastern District of Wisconsin, cancelling Tittjung's certificate of naturalization, United States v. Tittjung, 753 F.Supp. 251, 252-55 (E.D. Wis. 1990). As Tittjung's present motion is a collateral attack on subject matter jurisdiction, we need not revisit those facts.

/2 The Holtzman Amendment requires the deportation of aliens found to have "assisted or otherwise participated in the persecution of persons because of race, religion, national origin, or political opinion under the direction of, or in association with, the Nazi government of Germany." 8 U.S.C. sec. 1251 (a)(4)(D) (now codified as 8 U.S.C. sec. 1227(a)(4)(D)).

/3 Rule 60(b)(4) states in relevant part: On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void.

/4 We further note that other federal courts applying 8 U.S.C. sec. 1451(a) have similarly held that entry with an unlawfully obtained visa renders naturalized citizenship illegally procured. See, e.g. United States v. Stelmokas, 100 F.3d 302 (3rd Cir. 1996); United States v. Koziy, 728 F.2d 1314 (11th Cir. 1984); United States v. Linnas, 527 F. Supp. 426 (E.D.N.Y. 1981).

/5 Tittjung cannot contest that under 8 U.S.C. sec. 1201(i) a visa once granted can be revoked at any time, and that under 8 U.S.C. sec. 1227(a)(1)(A) and (B) an alien found to have unlawfully obtained a visa is subject to deportation. Yet, as he did above, Tittjung attempts to argue that the further illegal act of exploiting an invalid visa in order to obtain citizenship somehow immunizes the illegal entrant from punishment for her first violation, and actually rewards the second indiscretion by making denaturalization unavailable. We cannot conclude that Congress intended to establish such a system where compounded illegality is rewarded.

/6 We note that this argument, at best, is tangentially related to federal jurisdiction. The basis for the court's determination that Tittjung

was not lawfully admitted into the United States does not implicate federal court jurisdiction (in the usual sense), which we have previously noted is granted by 8 U.S.C. sec. 1451(a). The Supreme Court has described the term "jurisdiction" as "a word of many, too many meanings," Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 90 (1998), which has led to much confusion surrounding what is appropriately considered in a Rule 60(b)(4) motion. It is because of this uncertainty, as well as our desire to provide a measure of finality to these proceedings, that we nonetheless proceed cautiously, assume arguendo that the claim is jurisdictional in nature, and address it.

/7 Additionally, we note that to the extent that this is a jurisdictional argument, the fact that the Supreme Court in Fedorenko was not troubled with the removal of the defendant in light of the fact that the DPA was no longer in effect lends support to our present stance.

/8 The proposition that an armed concentration camp guard "assisted in persecution" (as is understood in the DPA) cannot be disputed. In Schmidt, we stated "it is clear that service as an armed concentration camp guard constitutes assisting in persecution under the DPA." 923 F.2d at 1258. Additionally we noted in Schellong v. INS, that "Nazi concentration camps were places of persecution; individuals who, armed with guns, held the prisoners captive and prodded them into forced labor with threats of death or capital punishment cannot deny that they aided the Nazis in their program of racial, political, and religious oppression." 805 F.2d 655, 661 (7th Cir. 1986). See also Fedorenko, 449 U.S. at 513-16; United States v. Leprich, 666 F. Supp. 967, 969 (E.D. Mich. 1987) ("[B]ecause Leprich was a concentration camp guard, he was ineligible for the visa he received and his citizenship was illegally procured.").