In the

# United States Court of Appeals
## For the Seventh Circuit

—————————

No. 23-1754

WORD SEED CHURCH,
now known as Grace Fellowship Covenant Church,

*Plaintiff-Appellant,*

*v.*

VILLAGE OF HAZEL CREST,

*Defendant-Appellee.*

—————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-07725 — **Harry D. Leinenweber**, *Judge.*

—————————

ARGUED JANUARY 9, 2024 — DECIDED AUGUST 6, 2024

—————————

Before ROVNER, HAMILTON, and JACKSON-AKIWUMI, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Plaintiff-appellant Word Seed Church believes that the Village of Hazel Crest zoning ordinance discriminates against churches and other religious assemblies. The district court disagreed, granted summary judgment to the village, and later denied the church's motion for relief from judgment. The church has appealed.

Before we reach the merits of the church's arguments, though, we must address some preliminary jurisdictional issues posed by the case's unusual procedural posture. The church did not appeal the district court's grant of summary judgment. Instead, the church filed a motion under Federal Rule of Civil Procedure 60(b) for relief from that final judgment and then appealed only the district court's denial of its Rule 60(b) motion. When an appeal arrives to us in this posture, we may not second-guess the district court's exercise of its subject matter jurisdiction unless the court made an egregious mistake on that score or intervening events have rendered the case moot. Neither happened in this case. We therefore have appellate jurisdiction and subject matter jurisdiction over this appeal, and we affirm on the merits the district court's denial of the church's Rule 60(b) motion because the district court did not abuse its discretion in making that decision.

I.   *Factual Background*

The Word Seed Church, now known as Grace Fellowship Covenant Church, is a congregation in the south suburbs of Chicago. Like many new congregations, the church did not have a permanent home but began looking for one in 2018 or 2019. The church identified the Village of Hazel Crest as one possible location, but the church had trouble finding a suitable property there. The church claims that this difficulty was caused by the village's zoning ordinance, which it contends discriminates against religious assemblies.

The village's zoning ordinance establishes nine zoning districts: four for residential use (R-0, R-1, R-2, and R-3), two for business (B-1 and B-2), one for limited manufacturing (M-1), one for Special Planned Development (SPD), and one for

office, research and compatible use (M-OR). The ordinance imposes certain restrictions on properties in each district, such as limits on building heights and lot sizes. It also sets out permitted and special uses for each zoning district. A permitted use is one that "may be lawfully established in a particular district or districts, provided it conforms with all requirements, regulations and performance standards (if any) of such district." Churches are not an enumerated permitted use in any of the nine zoning districts.

Only three zoning districts, all of them residential, permit churches as a special use: R-1, R-2, and R-3. But a group or person may not open a church in these districts without a special use permit. The zoning ordinance establishes a multi-step process for acquiring one. First, a land user must submit a special use application to the village's Zoning Administrator. Then a nine-person Zoning Commission reviews the application, prepares a written report outlining their findings, holds a public hearing on the application, and makes a recommendation to the Village Board of Trustees. Finally, the Board of Trustees approves or denies the application.

II. *Procedural Background*

Word Seed Church sued the Village of Hazel Crest claiming that the zoning ordinance discriminated against religious assemblies. By not including churches as a permitted use in any of the nine zoning districts, the church alleged, the village denied it the ability "to meet freely as of right." By forcing religious groups to go through "an onerous, expensive, time consuming, and overly discretionary process" to obtain a special use permit, the church alleged, the village imposed burdens on religious assemblies that were not imposed on non-religious groups. From the church's perspective, this

disparate treatment violates the Equal Protection Clause of the Fourteenth Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq. The church also alleged that the zoning ordinance was unconstitutionally vague.

The church moved for a preliminary injunction and declaratory judgment. It sought to enjoin the village from enforcing its zoning ordinance against the church while it looked for a new property. The village opposed the motion, arguing that the church lacked standing and was not likely to succeed on the merits. The district court denied the church's motion. *Word Seed Church v. Village of Hazel Crest*, 533 F. Supp. 3d 637 (N.D. Ill. 2021). Before deciding that the church failed to show a likelihood of success on the merits, the district court held that the church had standing at the preliminary relief stage. The court reasoned that the church adequately alleged it had identified a suitable property in a Hazel Crest business district, but that the village's zoning ordinance prevented the church from buying it. These allegations satisfied the court that the church was "likely to experience a future injury." *Id.* at 648.

The parties later filed cross-motions for summary judgment. The district court granted the village's motion and denied the church's. *Word Seed Church v. Village of Hazel Crest*, No. 1:20-cv-07725, 2022 WL 1028836 (N.D. Ill. Apr. 6, 2022). The district court did not revisit its standing determination but rejected the church's claims on their merits. The court concluded that RLUIPA did not apply because the church "never had a property interest in any real estate located in Hazel Crest." *Id.* at *3. The court denied the church's Equal Protection claim for several reasons: (1) the church's decision

not to seek a special use permit precluded any possibility of discrimination against it; (2) the church did not show that comparable secular organizations had been treated worse than churches; and (3) contrary to the church's allegations, there was no property in the village that could accommodate the 120-member capacity the church hoped to need as it grew. *Id.* Finally, the district court rejected the church's vagueness challenge, noting that this circuit has upheld zoning ordinances with similar special use regulations. *Id.*, citing *Vision Church v. Village of Long Grove*, 468 F.3d 975, 990 (7th Cir. 2006).

Thirty days after the district court granted summary judgment to the village, the church moved for relief from the final judgment under Rule 60(b). The church asserted that the village had amended its zoning ordinance in 2008 to remove numerous organizations from its list of permitted and special uses in business districts, and that the district court had erred by evaluating the church's arguments under the pre-2008 version of the ordinance, rather than the post-2008 version. The district court denied the church's Rule 60(b) motion, and the church has appealed.

III. *Analysis*

The merits of this appeal concern whether the district court abused its discretion by denying the church's Rule 60(b) motion, but we first must determine whether we have jurisdiction to decide the merits. It is axiomatic that federal courts, including appellate courts, "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). We explain first why we have

jurisdiction over this appeal and second why the district court did not abuse its discretion in denying the Rule 60(b) motion.

A. *Jurisdiction*

Federal courts have the jurisdiction needed to determine their own jurisdiction, for how else could they determine jurisdictional issues if they did not? *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376–77 (1940); *Stoll v. Gottlieb*, 305 U.S. 165, 171–72 (1938). When multiple jurisdictional issues present themselves in one case, courts must address them in an appropriate order.

Here, we must determine first whether we have jurisdiction over the appeal and then whether the district court had jurisdiction. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes." (quoting *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900))).

1. *Mootness*

Our subject matter jurisdiction would be defeated if something happened after the district court issued its final judgment that made the church's claims moot. See, e.g., *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 515, 518 (7th Cir. 2010) (holding that plaintiff who appealed denial of Rule 60(b)(3) motion lacked standing because she sold property at heart of the underlying litigation after district court's final judgment but before denial of her motion for relief). Unless at least one party maintains a "live" claim or a "cognizable interest" in the outcome of this case, we do not have a "Case or Controversy" within the meaning of Article III and must dismiss for lack of

subject matter jurisdiction. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation and quotation marks omitted).

One intervening event stands out as a possible source of mootness in this case. In December 2022, after the church filed its Rule 60(b) motion but before the district court ruled on it, the church filed a status report informing the court that it had closed on the purchase of a property elsewhere in Cook County. The church conceded that this change rendered its claim for injunctive relief moot. The church contends, however, that its claim for nominal damages survived. The village disagrees and argues that the church's property acquisition left all its claims moot.[1]

To assess that argument, we must figure out which claims remain on appeal. The church's amended complaint alleged four RLUIPA claims, an Equal Protection Claim, and a void-for-vagueness challenge. In its opening appellate brief, the church dropped its RLUIPA claims entirely, and nowhere mentioned its vagueness claim. The village responded by arguing that only the church's Equal Protection claim remained. The church did not deny that assertion in its reply brief. We thus consider only whether the church's Equal Protection claim seeking nominal damages is moot.

The village faces a "demanding standard" in proving that the church's Equal Protection claim is moot. *Mission Product*

---

[1] In its status report, the church also argued that its prayer for attorney fees and costs remained alive. If the church meant to argue that a claim for attorney fees and costs could stave off mootness, that argument would be mistaken. See *Steel Co.*, 523 U.S. at 107 ("An 'interest in attorney's fees is … insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.'" (alteration in original) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990))).

*Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 377 (2019). The village must show that "it is impossible for a court to grant any effectual relief whatever" to the church if it prevailed on its claim. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation omitted). So long as the church retains "a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* (internal quotation omitted).

The Supreme Court addressed the relationship between nominal damages and mootness in *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021). The Court focused on redressability—the third element of Article III standing—but only because it framed mootness as standing set in a time frame. *Id.* at 282–83, 291–93; but see *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 190–92 (2000) (critiquing generalization that mootness is simply "standing set in a time frame"); *West Virginia v. EPA*, 597 U.S. 697, 719 (2022) (noting that one difference between standing and mootness is that plaintiffs bear burden of proving standing while party asserting mootness bears burden of proving it).

In *Uzuegbunam*, the plaintiff alleged that he suffered a First Amendment violation when campus police, acting pursuant to university policies, prevented him from speaking on his college campus about his religion. 592 U.S. at 282–83. He sought nominal damages and injunctive relief. *Id.* at 284. The university officials ended the challenged policies while Uzuegbunam's lawsuit was pending, causing his claim for injunctive relief to become moot. But the Supreme Court held that the policy reversal did not render moot his claim for nominal damages. The Court examined common law cases stretching back centuries and concluded that plaintiffs had traditionally used claims for nominal damages to obtain

declaratory relief or to redress non-monetary harms in legal systems that lacked a declaratory judgment act. *Id.* at 286–91. The fact that nominal damages sustained those claims showed that they provided a concrete interest capable of redress by a court. Applying that reasoning to Uzuegbunam's claim, the Supreme Court held that his First Amendment claim for nominal damages saved the case from being moot. *Id.* at 293.

The village argues here that the church's claim is different from Uzuegbunam's. Whereas Uzuegbunam had suffered a completed constitutional injury that could be redressed by nominal damages, the church has not. According to the village, the fact that the district court labeled the church's claim as a "facial challenge" and found that the church had never "had any property located within Hazel Crest and has never applied for a special use" permit meant that it had not suffered a completed constitutional violation. Without a completed constitutional violation, this appeal would be moot because there would be no basis for an award of even nominal damages.

To address this argument, we must review the procedural history of the church's Equal Protection claim. In its amended complaint, the church alleged that the village's zoning ordinance, which prohibited churches in most zoning districts and allowed them as a special use in only three districts, discriminated against churches. This discrimination allegedly harmed the church by impeding its ability to obtain property in the village. On the church's motion for a preliminary injunction, the district court found these allegations sufficient to support standing. The court specifically noted that the church was alleging that the village's zoning ordinance prevented it

from obtaining a specific property on West 170th Street, which was in a business zone that did not allow churches as a permitted or special use. *Word Seed*, 533 F. Supp. 3d at 648.

Later, however, the church's Equal Protection claim failed on its merits when the court granted summary judgment to the village. *Word Seed*, 2022 WL 1028836, at *3. The district court did not revisit the issue of standing explicitly. Because the church had never applied for a special use permit, the court concluded, it could not bring an as-applied challenge to the administration of such permits. *Id.* But the court allowed the church to pursue its challenge to the zoning ordinance as a whole through a facial challenge. *Id.* Though the court granted summary judgment for the village on this claim, the fact that the court decided the merits necessarily means it found, at least implicitly, that the church had shown it had been injured by the zoning ordinance. See *Steel Co.*, 523 U.S. at 93–102 (recognizing that federal courts must have subject matter jurisdiction before reaching the merits).

The church had not yet secured a property when the court granted summary judgment, so the prospect of future injury—the possibility that the church would be unable to obtain property in the village because of the allegedly discriminatory zoning ordinance—sufficed to establish standing for injunctive relief. The church's allegation that it had been searching for but unable to secure a property for some time before filing its complaint alleged a completed constitutional violation for which it could seek nominal damages. If we assume for purposes of standing that the church was actually the victim of discrimination by the village, it would have been suffering from that discrimination

every day that it was looking for property in the village and unable to buy or rent a suitable property.

The church was free to pursue both injunctive relief and nominal damages in tandem. After its claim for injunctive relief became moot, it could continue to pursue its claim for nominal damages. Awarding nominal damages could have shown that the church was wronged and that its rights are valued and protected in our judicial system. And it would have warned the village not to repeat its conduct. As the Supreme Court recognized in *Uzuegbunam*, these are cognizable interests. See 592 U.S. at 286–91 (noting that "*every* legal injury necessarily causes damage," and that nominal damages are "concrete" because they can "affect the behavior of the defendant towards the plaintiff" (alterations and internal quotations omitted)); see also *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (noting that "the law recognizes the importance to organized society" that certain rights "be scrupulously observed" even if their infringement does not result in actual injury); Sadie Blanchard, *Nominal Damages as Vindication*, 30 George Mason L. Rev. 227, 250 (2022) (arguing that suits for nominal damages provide reliable information to the public that can be used for "reputation-based private ordering").

Nothing in the district court's opinion granting summary judgment to the village undermined nominal damages as a basis for standing. The district court found that there was "no existing parcel of land" in residential zoning districts that could accommodate the church's anticipated 120-member congregation, 2022 WL 1028836, at *2, 3, but it did not contradict its previous finding that the church could have (and would have) bought property in the business districts but for the allegedly discriminatory ordinance. Also, the fact that the

church never tried to obtain a special use permit for a particular parcel does not mean it could not have suffered a complete constitutional violation. The relevant portion of the church's amended complaint challenged the zoning ordinance as a whole, not just the permitting process. If the ordinance had in fact been discriminatory in a way that prevented the church from ever obtaining an interest in a specific property for which it could seek a special use permit, that would not mean the church's rights had not been violated.

Accordingly, the church's claim for nominal damages prevents this appeal from having been rendered moot by the church's purchase of property outside the village.

2. *The District Court's Jurisdiction*

Since the appeal is not moot, we consider next whether the district court had subject matter jurisdiction. *Buchel-Ruegsegger v. Buchel*, 576 F.3d 451, 453 (7th Cir. 2009) ("[W]e are bound to evaluate our own jurisdiction, as well as the jurisdiction of the court below, *sua sponte* if necessary." (internal quotation omitted)).

Standing is one essential piece of a court's subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61 (1992). If this case were a direct appeal of the final judgment, we would have to review whether the village had caused the church to suffer an injury in fact that is capable of being redressed in court. E.g., *Cook County v. Wolf*, 962 F.3d 208, 218 (7th Cir. 2020). We would review the district court's factual findings for clear error and decide de novo whether the church proved the three elements of standing. *Id.*

But this case is not on direct appeal. The church appealed only the denial of its Rule 60(b) motion for relief, which is a

collateral attack on the district court's underlying judgment. See *United States v. Tittjung*, 235 F.3d 330, 335 (7th Cir. 2000) (rejecting collateral attack on jurisdiction where challenger had opportunity to litigate question prior to entry of challenged judgment). That difference changes how we assess the district court's jurisdiction. Instead of reexamining whether the district court had subject matter jurisdiction, we treat its determination that it had jurisdiction—a necessary condition for the district court to reach the merits as it did in granting summary judgment to the village—as the court's final judgment on the matter. *Id.*, quoting *In re Edwards*, 962 F.2d 641, 644 (7th Cir. 1992).

A district court could make an error in its jurisdictional analysis, but after the time for challenging that error directly expires, the district court's conclusion is treated "like any other erroneous but final judgment," meaning that it is "good against collateral attack." *Edwards*, 962 F.2d at 644. As the Supreme Court put it: "A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not … reopen that question in a collateral attack upon an adverse judgment. It has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982); see generally *Philos Technologies, Inc. v. Philos & D, Inc.*, 645 F.3d 851, 855–56 (7th Cir. 2011) (discussing *Insurance Corp. of Ireland* and res judicata on jurisdictional issues and a defendant's options for challenging personal jurisdiction in direct appeal or collateral challenge).[2]

---

[2] Note that preclusion principles apply only if the challenging party previously appeared in the district court and contested jurisdiction. If the

Where jurisdiction was actually litigated, the cases recognize a narrow exception allowing collateral review of a district court's jurisdiction if the jurisdictional error was "egregious." *Tittjung*, 235 F.3d at 335, quoting *Edwards*, 962 F.2d at 644; see also *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (a party can obtain relief from a final judgment under Rule 60(b)(4) only if the "judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard"). An egregious error is different from an ordinary jurisdictional error and will result in the underlying judgment being deemed void. An egregious error is one that involves "a clear usurpation of judicial power, where the court wrongfully extends its jurisdiction beyond the scope of its authority." *Tittjung*, 235 F.3d at 335. Generally, that means there must be no plausible basis for the district court's jurisdictional determination. See *Espinosa*, 559 U.S. at 271; see also *United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply*, 55 F.3d 1311, 1316–17 (7th Cir. 1995) (concluding that district court's judgment was void because government failed to commence underlying forfeiture action within timeframe prescribed by statute); *Brumfield v. Louisiana State Bd. of Educ.*, 806 F.3d 289, 298 (5th Cir. 2015) (concluding that district court's order was void because it went "beyond correcting" bounds of the structural injunction that was basis for court's continuing jurisdiction).

No egregious error occurred in this case. Although the village argues that the church did not have standing in the district court—which, if true, would have deprived the district

---

party did not, then the standard for relief is lower. See *Philos Techs.*, 645 F.3d at 855–57 (discussing the differences as applied to default judgment).

court of jurisdiction over the church's claims—the district court had already concluded that the church had standing at the preliminary injunction stage. Any errors that the district court might have made in failing to reconsider the church's standing after that point would have been just jurisdictional errors. We are not implying there were any such errors. Rather, we are confining our observations to the issue before us in this appeal from denial of a Rule 60(b)(4) motion. There were no "egregious" mistakes of the degree that would allow and require us to reexamine the district court's jurisdiction.

The village argues that the foregoing reasoning applies only to collateral challenges brought under Rule 60(b)(4), which entitles a party to relief from a final judgment if "the judgment is void." It is true that all the cases we cited feature collateral attacks brought under Rule 60(b)(4). There is a good reason for that. Of the six grounds for relief listed in Rule 60(b), only Rule 60(b)(4) provides relief from a void judgment. Anything that involves a district court's subject matter jurisdiction (or lack thereof) would naturally be funneled into a Rule 60(b)(4) analysis.

The village also argues that we could reconsider subject matter jurisdiction under another Rule 60(b) provision. It's an odd argument coming from the party that was opposing relief under Rule 60(b), but we see no basis to disregard the law that has developed under Rule 60(b)(4) to address collateral challenges to subject matter jurisdiction. Relief may actually be easier to obtain under Rule 60(b)(4) than under other portions of the rule. Other courts confronting similar situations have kept a similar focus on Rule 60(b)(4). See, e.g., *Spitznas v. Boone*, 464 F.3d 1213, 1225 n.11 (10th Cir. 2006) ("A Rule 60(b)(6) motion may not be used as a vehicle to re-allege

60(b)(4) allegations."); *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 301–04 (4th Cir. 2017) (evaluating appeals of denials of both Rule 60(b)(4) and (b)(6) motions, but evaluating jurisdictional arguments only under Rule 60(b)(4) analysis); *Kocher v. Dow Chemical Co.*, 132 F.3d 1225, 1229–31 (8th Cir. 1997) (same); see generally *Corley v. United States*, 556 U.S. 303, 314 (2009) ("a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (alterations, quotations, and citation omitted)).

In sum, because there was no egregious jurisdictional error in this case, we may not reconsider the district court's jurisdictional determination as we would need to on direct appeal. We therefore treat that determination as binding. Since no intervening events since that decision have defeated subject matter jurisdiction, we have jurisdiction and must decide the merits of the church's motion for relief from final judgment.

B.   *Merits Under Rule 60(b)*

After navigating those jurisdictional and procedural issues, we finally come to the merits. The church's motion for relief from judgment under Rule 60(b) asserted that the district court evaluated the wrong version of the zoning ordinance. The village amended its zoning ordinance in 2008, but the amendments still had not been codified by the time the church filed suit in December 2020. The church contended that the district court should have evaluated the published version of the zoning ordinance, which was the same as the pre-2008 version, instead of the unpublished post-amendment version. According to the church, that mistake led the district court to use the wrong comparators in

determining whether churches were treated worse than secular organizations.

It is not clear which of the six grounds for relief under Rule 60(b) the church meant to invoke, but only one seems plausible given the nature of the church's argument: Rule 60(b)(1), which provides relief for "mistake, inadvertence, surprise, or excusable neglect."

We review a denial of a Rule 60(b) motion for abuse of discretion. *Banks v. Chicago Bd. of Educ.*, 750 F.3d 663, 667 (7th Cir. 2014). We often frame the abuse of discretion standard as requiring a showing that "no reasonable person" could agree with the court's ruling, e.g., *Robb v. Norfolk & Western Ry. Co.*, 122 F.3d 354, 357 (7th Cir. 1997) (internal quotation omitted), even if the standard is not quite that demanding in practice. Motions filed under Rule 60(b)(1) frequently seek to rectify errors that could not be fixed on appeal, but Rule 60(b)(1) is not limited to those situations. See *Mendez v. Republic Bank*, 725 F.3d 651, 659 (7th Cir. 2013) (affirming grant of Rule 60(b) relief that avoided need for appeal to correct error). In any event, we have emphasized our deferential standard of review of district court decisions under Rule 60(b). *Easley v. Kirmsee*, 382 F.3d 693, 697 (7th Cir. 2004).

In this case, the district court did not abuse its discretion in denying the church's Rule 60(b) motion. The district court noted that the church might have waived the argument it raised in its motion by failing to raise it in the summary judgment briefing. But the court proceeded to analyze the merits of the church's argument and concluded that its analysis remained unchanged under either version of the zoning ordinance. The court concluded that the church's difficulty in

finding a property in the village was due to the fact that the church could not find a large enough parcel of land.

We do not disagree with the district court's conclusion, and we see two more fundamental flaws in the church's argument. As the district court noted in its opinion denying the church's motion for a preliminary injunction, the 2008 Amendment removed multiple categories of businesses from its list of permitted and special uses in business districts. *Word Seed*, 533 F. Supp. 3d at 644. All the removed businesses were secular in nature. The church did not explain how it could succeed under the post-2008 zoning ordinance, but not the pre-2008 ordinance, if the amendment did not affect religious assemblies in any way. If anything, the church's chances of success were higher under the pre-2008 ordinance when there were more secular organizations against which to compare the church's treatment—an argument something along the lines of, "if all *those* organizations are permitted uses, why can't churches be permitted uses, too?" That argument seems less likely to succeed if numerous secular comparators were removed without other secular organizations taking their place.

Perhaps more daunting for the church, the 2008 amendment affected only the B-2 district's permitted and special uses. Yet the church explicitly waived any challenge to the B-2 district in its summary judgment briefing. Pl.'s Resp. to Def.'s Mot. Summ. J., ECF No. 63 at 6 ("On summary judgment, Plaintiffs do not argue that its Equal Terms or Equal Protection claim entitles them from relief in the B-1 or B-2 districts."). The district court cannot be blamed for disregarding an amendment that the church itself said would be irrelevant to its argument.

The denial of the church's Rule 60(b) motion for relief is AFFIRMED.